**GENERAL DYNAMICS CORPORATION, et al.**

v.

**The UNITED STATES.**

No. 7–81T.

United States Claims Court.

Sept. 7, 1984.

Lynne E. McNown, Chicago, Ill., for plaintiffs.

J. Walker Johnson, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

SETO, Judge.

In this action, plaintiffs request an income tax refund based on an accrued expense deduction which was disallowed by the Internal Revenue Service for the taxable year 1972. The issue before the court is whether the fact and amount of plain-

tiffs' liability is certain enough for the purpose of determining an accrued expense deduction. For the reasons set forth below, the court concludes that the deduction should be allowed and that plaintiffs are entitled to a refund.

## FACTS

A three-day trial was held in St. Louis, Missouri where plaintiffs introduced the testimony of various expert witnesses, along with an extensive stipulation of facts. Defendant accepted the majority of plaintiffs' factual assertions, but disputed plaintiffs' claims as a matter of law.

Stromberg-Carlson Corporation, DatagraphiX Inc., Material Service Corporation, Marblehead Lime Co., Freeman Coal Corporation, and United Electric Coal Companies (hereinafter "plaintiffs") are, and were in 1972, wholly-owned subsidiaries of General Dynamics Corporation, a Delaware corporation with its principal office in St. Louis, Missouri. In 1972, plaintiffs used an accrual method of accounting with a fiscal year coinciding with the calendar year.

From 1962 until October 1, 1972, plaintiffs purchased group medical insurance from Aetna Life Insurance Company ("Aetna") for some of plaintiffs' offices and from Prudential Insurance Company of America ("Prudential") for other offices. This insurance included medical care benefit plans for plaintiffs' employees and their qualified dependents. In the last quarter of 1972, plaintiffs became self-insurers for their medical care plans. Aetna and Prudential continued to work with plaintiffs under separate Administrative Services Agreements, whereby the insurance companies administered the self-insured plans for the locations that each insurance company had previously insured for plaintiffs. There were no changes in medical benefits provided or in the personnel who were handling the claims-processing procedure.

The claims-processing procedure was straightforward. When an employee or qualified dependent received medical treatment covered by the plan, the employee obtained payment for the treatment by submitting a health-expense benefits claim form to plaintiffs' employee-benefits personnel office at the appropriate facility. The claim form contained pertinent information about the employee and the treatment, including the date and cost of each medical service. Claim forms, with itemized bills attached, were checked against personnel records to verify that the persons making the claims were eligible under the plan at the time of treatment. Eligible claims were sent to Aetna or Prudential, depending on the facility of origin, for final processing and payment. Drafts were issued either on plaintiffs' account or from one of the insurance companies' accounts pursuant to an automatic funds-transfer arrangement with plaintiffs.

The period between the rendering of medical services and the payment for such treatment was labeled a "lag time" by plaintiffs. For example, on December 31, 1972, plaintiffs had neither received all of the claim forms which would be filed for medical services rendered in 1972, nor completely processed all filed claims. Consequently, plaintiffs established reserve accounts to reflect their liability for medical care received during the last quarter of the calendar year 1972, but unpaid as of December 31, 1972. As accrual-basis taxpayers, plaintiffs deducted expenses not when actually paid, but rather in the taxable year in which they were incurred. The reserves were substantially similar to those established by Aetna and Prudential to reflect their accrued liability for incurred but not yet reported claims ("IBNR" reserves). Prior to October 1, 1972, Aetna and Prudential deducted their IBNR reserves in the taxable year the services were received. Plaintiffs sought advice from Aetna and Prudential concerning accurate estimation of liability for medical care benefits. They were advised that the liability for unpaid benefits could be reasonably determined as a percentage of the payments for medical benefits actually made during a prior period of equal length. The percentage figure was based upon an analysis of plaintiffs'

experience with lag between accrual and payment of claims[1].

Plaintiffs' method of computing their reserves did not reflect any specific liability to particular employees who received treatment; rather, plaintiffs estimated their aggregate liability. While plaintiffs admit that it would have been theoretically possible to canvass their employees in an effort to determine the approximate amount of their liability, as of December 31, 1972, such a procedure would have been prohibitively expensive and overly burdensome. Thus, plaintiffs used what they claim was the most reasonable method for estimating their liability in the aggregate—a method derived from procedures developed by the insurance companies. *See* note 1. Plaintiffs' evidence that its methods reflected accepted insurance company practice was essentially uncontested. Defendant did not dispute the accuracy of these practices or that insurance companies can and do deduct such reserves.

Plaintiffs used the above-mentioned methods to determine that, as of the end of 1972, their liability for medical care received during the last quarter of 1972 was $5,575,289. This amount was carried as a liability on plaintiffs' financial statement as of December 31, 1972. General Dynamics Corporation, on behalf of its subsidiaries, filed a consolidated federal income tax return for the calendar year 1972. Plaintiffs did not deduct the reserves in that year; instead, they filed a claim in 1973 asking for the 1972 accrued expense deduction and a refund of $31,708 plus interest. The deduction was disallowed by the Internal Revenue Service.

## DISCUSSION

The issue before the court is whether plaintiffs may properly deduct their employee medical benefit reserves in 1972 in accordance with their accrual method of accounting and the Internal Revenue Code.

■ There is no dispute that expenses incurred by plaintiffs in connection with the medical benefit plans were deductible as ordinary and necessary business expenses under Section 162(a) of the Internal Revenue Code, Title 26 of the United States Code (hereinafter "the Code"). The issue is the timing of plaintiffs' deduction. The general rule establishing the proper taxable year for taking such deductions for accrual method taxpayers is set forth in Treasury Regulation Section 1.461–1(a)(2): "The taxable year in which *all the events have occurred* which determine *the fact* of the liability[,] and *the amount* thereof can be determined with reasonable accuracy." (Emphasis supplied.) This regulation is an adoption of the "all events" test first formulated by the Supreme Court in *United States v. Anderson*, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). If a taxpayer's liability meets the conditions stated by this test, the deduction must be allowed in accordance with the intent of the regulation and with the fundamental accounting principle that accrual accounts immediately reflect expenses incurred without regard to the timing of actual payment. *See Dixie Pine Products Co. v. Commissioner*, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270, 272 (1944) ("a taxpayer who accounts on the accrual basis may, and should, deduct ... a liability which really accrues in the taxable year.").

Thus, under the "all events" test, the cardinal issue before this court is: By the end of 1972, had all events occurred which established (1) the fact of, and (2) the

---

1. Accruals for Prudential plans were established using a "lag factor" derived by averaging both the number of days of lag for each claim and the amount of each payment. This lag factor was then applied to the total amount of claims paid in the prior period. The Aetna-serviced facilities determined their reserves by (1) taking the reserve balances returned upon the change to self-insurance; (2) adding a monthly provision for additional medical benefits; and (3) subtracting the medical benefit drafts which had been paid by year end. Aetna had developed lag factors based on plaintiffs' specific experience which, when compared to the standard lag factor, revealed a close correlation. As a result, plaintiffs used a standard lag factor derived from Aetna's actuarial studies, adjusted both for inflation and for application to the amount of claims paid in a three-month period.

amount of, plaintiffs' liability for medical treatment received by their employees in 1972?

## Fact of Liability

The first prong of the "all events" test requires the taxpayer, seeking to deduct an accrued expense, to demonstrate that the fact of liability was certain at the end of the tax year in question. *Eastman Kodak Company v. United States*, 209 Ct.Cl. 365, 375, 534 F.2d 252, 258 (1976). Plaintiffs assert that their liability is established when a qualified employee or dependent receives covered medical services. At that point, all conditions to basic liability under the self-insured plans are satisfied: (1) the person is eligible for benefits; (2) the services are covered by the plan; and (3) treatment is in fact received. Defendant rejoins that liability is established only after a claim has been received, reviewed, and acted upon by plaintiffs. Defendant avers that until liability is determined by the claims processor, plaintiffs' obligation to pay benefits is uncertain and therefore, contingent.

■ The court believes that defendant's emphasis on the claims-processing procedure is misplaced. According to the evidence adduced at trial, the procedure was routine and clerical. The claims-review process was performed by experienced claims-handling personnel and was a matter of established procedure which included calculating the amount of payment according to clear and objective benefit schedules and formulas set forth in the plans. While the claims-processing procedure is a necessary event in obtaining reimbursement under the plans, it is an administrative step of the type considered by the Supreme Court in *Anderson* not to be a bar to satisfying the first prong of the "all events" test. In *Anderson*, where liability for a munitions tax had already accrued, the event of actual tax assessment in the following year was considered to be "technical" and therefore not necessary to satisfy the "all events" test for the deduction of a tax liability reserve. *Anderson*, 269 U.S. at 441, 46

S.Ct. at 134. In the instant case, the events of claim filing and processing similarly are ministerial in nature. As a result, they are not a condition precedent to establishing the fact of liability.

■ While claims are processed to pay all amounts due under the plans, however, the full amount requested in the claims is not always paid. In such cases, the expense is either of the type expressly excluded or only partially covered by plaintiffs' plan. It has been the experience of the administrators of the final processing that approximately 90% of all submitted claims are paid. Defendant asserts that this 10% variance renders the claims-processing procedure adversarial, and the fact of liability therefore contingent. Contingency, however, connotes contest or uncertainty, neither of which is true in plaintiffs' case. There is little question as to the type and the amount of benefits to which the employees are entitled under the plans. Indeed, plan coverage is clearly outlined in booklets describing the standards for payment. The fact that 10% of the claims include expenses not covered by the plans does not *ipso facto* make plaintiffs' liability uncertain. To the contrary, such liability is fixed and certain at the time the eligible employee receives covered medical care.

Defendant also maintains that, to the extent an injured employee chooses not to file a claim, or is not eligible for claimed benefits, plaintiffs' liability remains uncertain until after a liability determination is made. These types of uncertainties, however, were not considered to render an employer's liability for worker's compensation benefits contingent in *Kaiser Steel Corp. v. United States*, 717 F.2d 1304 (9th Cir. 1983). Following *Crescent Wharf & Warehouse Co. v. Commissioner*, 518 F.2d 772 (9th Cir.1975), the court in *Kaiser* held that, under a state worker's compensation statute, once a worker is injured in the course of employment and liability is not contested by the employer, all events establishing the self-insured employer's liability to pay have occurred, thus meeting the first prong of the "all events" test. In the

present action, plaintiffs' obligation to pay for medical care arose under the self-insured plans when an eligible employee received covered treatment. Indeed, liability was fixed by contract upon receipt of covered medical services. The logic of *Crescent* and *Kaiser* dictates that the fact of *injury* establishes the fact of *liability*. Therefore, the occurrence of the insured event, i.e. an employee receiving covered medical care, is the critical event giving rise to plaintiffs' obligation to pay. For these reasons, plaintiffs' liability cannot be characterized as contingent.

■ When plaintiffs calculated their liability and deposited the calculated amount in their accrued expense reserves, those amounts inured to, and for, the benefit of employees who had received medical care in the last quarter of 1972. Defendant would have the court distinguish plaintiffs' reserves from other types of deductible accrued expense reserves, on the basis of the revocability of funds contributed to such accounts. Thus, defendant argues that because plaintiffs were not irrevocably bound to pay the full amount in the reserves, they are attempting to deduct an estimate of future indebtedness. Defendant cites two cases for the proposition that express provisions to contribute certain irrevocably committed amounts to the deductible liability reserves must appear in the plans under which liability was fixed: *Washington Post Company v. United States*, 186 Ct.Cl. 528, 405 F.2d 1279 (1969) (involving a profit-sharing plan), and *Inland Steel Company v. United States*, 212 Ct.Cl. 558, 566 F.2d 1188 (1976) (concerning supplemental unemployment benefits pursuant to a collective bargaining agreement). Both of these cases are unpersuasive. In *Zwicker Knitting Mills v. United States*, 80–2 U.S.T.C. p. 9832 (Ct.Cl.1980), the Court of Claims held that it is not the presence of such an express provision in a benefit plan which absolutely fixes liability.

Moreover, it held that the fact that unexpended portions of the reserve could have conceivably reverted to corporate, use is insignificant. *Id.* Finally, it is clear that only the existence of an absolute liability is necessary for passing the "all events" test; absolute certainty that it will be discharged by payment is not. *Helvering v. Russian Finance Construction Corp.*, 77 F.2d 324, 327 (2d Cir.1935).

Defendant additionally contends that liability wasn't fixed in 1972 because plaintiffs did not know by year's end the identity of the employees who had received medical treatment that year. Although plaintiffs' situation is distinguishable from the situation in *Kaiser*, wherein taxpayers had the benefit of a filed claim upon which to base their estimated liability, the distinction is immaterial. Plaintiffs' liability, in the instant case, was not based on the filing of a claim; rather, it was fixed under the terms of the self-insured plans upon occurrence of the insured event—the receipt of covered services by the insureds. Temporary uncertainty as to the identity of the payee, or the time or amount of payment, does not preclude a taxpayer from having a fixed liability for purposes of the "all events" test. Once liability itself is fixed, other uncertainties do not destroy the initial certainty. *See Washington Post Company*, 186 Ct.Cl. at 536, 405 F.2d at 1284.

■ We find that the last event necessary to fix plaintiffs' liability was the *occurrence* of the insured event. Plaintiffs were not predicting the happening of future events; rather, they were estimating the amount of fixed liability for events which had already occurred. As of year end 1972, the events giving rise to plaintiffs' obligation had occurred, and nothing could change the extent of their liability. Applying the "all events" test to the facts of this case in a reasonable and practical manner demonstrates that plaintiffs satisfy the first prong of the test.[2]

---

2. Plaintiffs do not attempt to deduct their reserves under the sections of the Code applicable to insurance companies. Defendant asserts that the existence of these code sections

[§§ 809(d)(1) and 832(b)(5) allowing life and casualty insurers to deduct incurred but unascertained losses] and the repeal of § 462 (a section which had allowed ordinary taxpayers

### Amount of Liability

■ Although the exact amount of plaintiffs' incurred liability could not have been determined by year end, plaintiffs should have been permitted to accrue such liability in 1972, so long as the amount could be computed with reasonable accuracy. Treasury Regulation § 1.461–1(a)(2) (1984). The cardinal issue is whether the amount of plaintiffs' liability for employees who received medical care in 1972, but which benefits became payable in later years, could be determined with reasonable accuracy through application of plaintiffs' methods.

A comparison of the total amount of medical benefit claims paid in 1973 and 1974 for services received in 1972 ($4,583,893), and the accrued reserve amount sought to be deducted for this liability at year-end 1972 ($5,575,289), indicates that 82.2% of the reserve was subsequently paid. This percentage, i.e., 82.2%, is well within the reasonably accurate range accepted by the courts for the purposes of satisfying the second prong of the "all events" test. See, e.g., Harrold v. Commissioner, 192 F.2d 1002, 1003 (4th Cir. 1951) (81%), and Denise Coal Company v. Commissioner, 271 F.2d 930, 936 (3rd Cir. 1959) (48%).

Plaintiffs' witnesses from Prudential and Aetna, accepted by the court to be experts in the field of setting and determining reserves under group medical benefit plans, testified that the methods used by plaintiffs were reasonably accurate methods for determining the amount of plaintiffs' liabilities for medical services rendered, but not paid, by December 31, 1972. Defendant, however, claims that the accuracy of plaintiffs' liability reserve should not be measured in the aggregate. Defendant asserts that the "all events" test requires an item-by-item approach to determine individual liability as to each employee. The use of the aggregate method for setting amounts of liability reserves, however, was approved by the court in Kaiser, 717 F.2d at 1309. Similarly, no separate liability determination as to individuals was required in Washington Post, 186 Ct.Cl. at 535, 405 F.2d at 1283. In 1972, plaintiffs employed approximately 56,000 people, and received thousands of claims for payment of medical services rendered in that year. Requiring plaintiffs to determine the amount of liability on an individual basis would be neither realistic nor in accordance with sound business practice. See Harrold, 192 F.2d at 1006. Therefore, we find that plaintiffs' system for determining the amount of their liability was logical and reasonable.

### CONCLUSION

■ When all the facts which determine the existence of a taxpayer's liability have occurred in the taxable year, and the amount, although not definitely ascertained, is susceptible to reasonably accurate estimation at the end of that taxable year, a deduction from income may be taken. Harrold, 192 F.2d at 1006. Because plaintiffs have established that their liability had arisen by the end of 1972, and that their method of calculating that liability is reasonably accurate, the requested deduction will be allowed pursuant to 26 U.S.C.A. § 162(a) n. 21 (1978). Having met the "all events" test, plaintiffs' are entitled to a refund in the amount of $31,708 plus interest, representing their valid deduction for expenses incurred in 1972. Pursuant to RUSCC 58, the Clerk of the Court is directed to enter judgment in accordance with this opinion.

It is so ORDERED.

---

to deduct estimated expense reserves) manifest a clear legislative intent against allowing ordinary taxpayers to accrue and deduct estimated expenses. The court disagrees with this interpretation of legislative history. We think that the 1954 enactment and 1955 repeal of § 462 operates to reestablish the "all events" test as the appropriate standard for ordinary taxpayers to meet. See American Automobile Association v. United States, 154 Ct.Cl. 869, 367 U.S. 687, 698, 81 S.Ct. 1727, 1733, 6 L.Ed.2d 1109, 1116 (1961) (Stewart, J., dissenting).