# UNITED STATES *v.* GENERAL DYNAMICS CORP. ET AL.

No. 85–1385.   Argued January 13, 1987—Decided April 22, 1987

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, POWELL, and SCALIA, JJ., joined. O'CONNOR, J., filed a dissenting opinion, in which BLACKMUN and STEVENS, JJ., joined, *post*, p. 247.

*Alan I. Horowitz* argued the cause for the United States. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Olsen, David English Carmack,* and *William A. Whitledge.*

*Lynne E. McNown* argued the cause for respondents. With her on the brief was *Keith F. Bode.*

JUSTICE MARSHALL delivered the opinion of the Court.

The issue in this case is whether an accrual-basis taxpayer providing medical benefits to its employees may deduct at the close of the taxable year an estimate of its obligation to pay for medical care obtained by employees or their qualified dependents during the final quarter of the year, claims for which have not been reported to the employer.

## I

Taxpayers, respondents herein, are the General Dynamics Corporation and several of its wholly owned subsidiaries (General Dynamics).[1]  General Dynamics uses the accrual method of accounting for federal tax purposes; its fiscal year is the same as the calendar year.  From 1962 until October 1, 1972, General Dynamics purchased group medical insurance for its employees and their qualified dependents from two private insurance carriers.  Beginning in October 1972, General Dynamics became a self-insurer with regard to its medical care plans.  Instead of continuing to purchase insurance from outside carriers, it undertook to pay medical claims out of its own funds, while continuing to employ private carriers to administer the medical care plans.

To receive reimbursement of expenses for covered medical services, respondent's employees submit claims forms to employee benefits personnel, who verify that the treated persons were eligible under the applicable plan as of the time of treatment.  Eligible claims are then forwarded to the plan's administrators.  Claims processors review the claims and approve for payment those expenses that are covered under the plan.

Because the processing of claims takes time, and because employees do not always file their claims immediately, there is a delay between the provision of medical services and payment by General Dynamics.  To account for this time lag, General Dynamics established reserve accounts to reflect its liability for medical care received, but still not paid for, as of December 31, 1972.  It estimated the amount of those reserves with the assistance of its former insurance carriers.

Originally, General Dynamics did not deduct any portion of this reserve in computing its tax for 1972.  In 1977, how-

---

[1] Respondents filed a consolidated federal income tax return for 1972, the year at issue here.  We therefore treat them as a single entity.

ever, after the Internal Revenue Service (IRS) began an audit of its 1972 tax return, General Dynamics filed an amended return, claiming it was entitled to deduct its reserve as an accrued expense, and seeking a refund. The IRS disallowed the deduction, and General Dynamics sought relief in the Claims Court.

The Claims Court sustained the deduction, holding that it satisfied the "all events" test embodied in Treas. Reg. § 1.461–1(a)(2), 26 CFR § 1.461–1(a)(2) (1986), since "all events" which determined the fact of liability had taken place when the employees received covered services, and the amount of liability could be determined with reasonable accuracy. Thus, the court held that General Dynamics was entitled to a refund. 6 Cl. Ct. 250 (1984). The Court of Appeals for the Federal Circuit affirmed, largely on the basis of the Claims Court opinion. 773 F. 2d 1224, 1226 (1985).

The United States sought review of the question whether all the events necessary to fix liability had occurred.[2] We granted certiorari, 476 U. S. 1181 (1986). We reverse.

## II

As we noted in *United States* v. *Hughes Properties, Inc.,* 476 U. S. 593, 600 (1986), whether a business expense has been "incurred" so as to entitle an accrual-basis taxpayer to deduct it under § 162(a) of the Internal Revenue Code, 26 U. S. C. § 162(a), is governed by the "all events" test that originated in *United States* v. *Anderson,* 269 U. S. 422, 441 (1926). In *Anderson,* the Court held that a taxpayer was obliged to deduct from its 1916 income a tax on profits from munitions sales that took place in 1916. Although the tax would not be assessed and therefore would not formally be due until 1917, all the events which fixed the amount of the tax and determined the taxpayer's liability to pay it

---

[2] The United States did not seek review of whether the amount of liability in this case could be determined with reasonable accuracy. See Pet. for Cert. 13, n. 2.

had occurred in 1916. The test is now embodied in Treas. Reg. § 1.461–1(a)(2), 26 CFR § 1.461–1(a)(2) (1986), which provides that "[u]nder an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." [3]

It is fundamental to the "all events" test that, although expenses may be deductible before they have become due and payable, liability must first be firmly established. This is consistent with our prior holdings that a taxpayer may not deduct a liability that is contingent, see *Lucas* v. *American Code Co.*, 280 U. S. 445, 452 (1930), or contested, see *Security Flour Mills Co.* v. *Commissioner of Internal Revenue*, 321 U. S. 281, 284 (1944). Nor may a taxpayer deduct an estimate of an anticipated expense, no matter how statistically certain, if it is based on events that have not occurred by the

---

[3] The regulation in force in 1972 was identical to the present version. See 26 CFR § 1.461–1(a)(2) (1972).

The "all events" test has been incorporated into the Internal Revenue Code by the Deficit Reduction Act of 1984, Pub. L. 98–369, 98 Stat 598, 607, 26 U. S. C. § 461(h)(4) (1982 ed., Supp. III). Section 461(h) imposed limits on the application of the test, providing that "in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs." § 461(h)(1). The pertinent portions of the 1984 amendments were retained in the Tax Reform Act of 1986.

Section 461(h) does not apply in this case. It became effective as of July 18, 1984, the date of the enactment of the Deficit Reduction Act. See § 91(g)(1)(A), 26 U. S. C. § 461 note (1982 ed., Supp. III). While that statute permits a taxpayer to elect the application of § 461(h) to amounts incurred on or before July 18, 1984, see § 91(g)(2), there is no indication that the taxpayer here has done so. We do not address how this case would be decided under § 461(h), but note that the legislative history of the Act indicates that, "[i]n the case of . . . employee benefit liabilities, which require a payment by the taxpayer to another person, economic performance occurs as the payments to such person are made." H. R. Rep. No. 98–432, pt. 2, p. 1255 (1984); see also H. Conf. Rep. No. 98–861, p. 872 (1984).

close of the taxable year. *Brown* v. *Helvering*, 291 U. S. 193, 201 (1934); cf. *American Automobile Assn.* v. *United States*, 367 U. S. 687, 693 (1961).

We think that this case, like *Brown*, involves a mere estimate of liability based on events that had not occurred before the close of the taxable year, and therefore the proposed deduction does not pass the "all events" test. We disagree with the legal conclusion of the courts below that the last event necessary to fix the taxpayer's liability was the receipt of medical care by covered individuals.[4] A person covered by a plan could only obtain payment for medical services by filling out and submitting a health-expense-benefits claim form. App. 23. Employees were informed that submission of satisfactory proof of the charges claimed would be necessary to obtain payment under the plans. *Id.*, at 58. General Dynamics was thus liable to pay for covered medical services *only* if properly documented claims forms were filed.[5] Some covered individuals, through oversight, procrastination, confusion over the coverage provided, or fear of disclosure to the employer of the extent or nature of the services received, might not file claims for reimbursement to which they are plainly entitled. Such filing is not a mere technicality. It is crucial to the establishment of liability on the part of the taxpayer. Nor does the failure to file a claim represent the type of "extremely remote and speculative possibility" that we

---

[4] We do not challenge the Claims Court's factual conclusion that the processing of the claims was "routine," "clerical," and "ministerial in nature," 6 Cl. Ct. 250, 254 (1984). The Claims Court did not, however, make any factual findings with respect to the *filing* of claims. We conclude that, as a matter of law, the filing of a claim was necessary to create liability.

[5] General Dynamics could not avoid its obligation to pay for services after they were received by, for example, discharging the employee. If an employee were terminated after receiving covered services but before filing a claim, the taxpayer would still be obliged to reimburse that employee, App. 22—but *only in the event* that the employee filed a claim form. The filing of the claim is thus a true condition precedent to liability on the part of the taxpayer.

held in *Hughes*, 476 U. S., at 601, did not render an otherwise fixed liability contingent. Cf. *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11, 13 (1930) (where executory contract of sale was created in 1916 but papers necessary to effect transfer were not prepared until 1917, unconditional liability for the purchase price was not created in 1916, and the gain from the sale was therefore not realized until 1917). Mere receipt of services for which, in some instances, claims will not be submitted does not, in our judgment, constitute the last link in the chain of events creating liability for purposes of the "all events" test.

The parties stipulated in this case that as of December 31, 1972, the taxpayer had not received all claims for medical treatment services rendered in 1972, and that some claims had been filed for services rendered in 1972 that had not been processed. App. 26. The record does not reflect which portion of the claims against General Dynamics for medical care had been filed but not yet processed and which portion had not even been filed at the close of the 1972 tax year. The taxpayer has the burden of proving its entitlement to a deduction. *Helvering* v. *Taylor*, 293 U. S. 507, 514 (1935). Here, respondent made no showing that, as of December 31, 1972, it knew of specific claims which had been filed but which it had not yet processed. Because the taxpayer failed to demonstrate that any of the deducted reserve represented claims for which its liability was firmly established as of the close of 1972, all the events necessary to establish liability were not shown to have occurred, and therefore no deduction was permissible.

This is not to say that the taxpayer was unable to forecast how many claims would be filed for medical care received during this period, and estimate the liability that would arise from those claims. Based on actuarial data, General Dynamics may have been able to make a reasonable estimate of how many claims would be filed for the last quarter of 1972. But that alone does not justify a deduction. In *Brown, supra,*

the taxpayer, a general agent for insurance companies, sought to take a deduction for a reserve representing estimated liability for premiums to be returned on the percentage of insurance policies it anticipated would be cancelled in future years. The agent may well have been capable of estimating with a reasonable degree of accuracy the ratio of cancellation refunds to premiums already paid and establishing its reserve accordingly. Despite the "strong probability that many of the policies written during the taxable year" would be cancelled, 291 U. S., at 201, the Court held that "no liability accrues during the taxable year on account of cancellations which it is expected may occur in future years, since the events necessary to create the liability do not occur during the taxable year." *Id.*, at 200. A reserve based on the proposition that a particular set of events is likely to occur in the future may be an appropriate conservative accounting measure, but does not warrant a tax deduction. See *American Automobile Assn.* v. *United States, supra*, at 692; *Lucas* v. *American Code Co.*, 280 U. S., at 452.

That these estimated claims were not intended to fall within the "all events" test is further demonstrated by the fact that the Internal Revenue Code specifically permits insurance companies to deduct additions to reserves for such "incurred but not reported" (IBNR) claims. See 26 U. S. C. § 832(b)(5) (providing that an insurance company may treat as losses incurred "all unpaid losses outstanding at the end of the taxable year"); § 832(c)(4) (permitting deduction of losses incurred as defined in § 832(b)(5)).[6] If the "all events" test permitted the deduction of an estimated reserve representing claims that were actuarially likely but not yet reported, Congress would not have needed to maintain an

---

[6] During the time that private insurance carriers provided insurance coverage for General Dynamics employees, the insurers maintained reserves for IBNR claims and deducted those reserves in the tax year in which the services were received. 6 Cl. Ct., at 252.

explicit provision that insurance companies could deduct such reserves.[7]

General Dynamics did not show that its liability as to any medical care claims was firmly established as of the close of the 1972 tax year, and is therefore entitled to no deduction. The judgment of the Court of Appeals is

*Reversed.*

JUSTICE O'CONNOR, with whom JUSTICE BLACKMUN and JUSTICE STEVENS join, dissenting.

Section 446(a) of the Internal Revenue Code of 1954 provides that taxable income "shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." The Code specifically recognizes the use of "an accrual method," 26 U. S. C. § 446(c)(2), under which a taxpayer is permitted to deduct an expense in the year in which it is "incurred," regardless of when it is actually paid. § 162(a). Under the "all events" test, long applied by this Court and the Internal Revenue Service, an expense may be accrued and deducted when all the events that determine the fact of liability have occurred, and the amount of the liability can be determined with reasonable accuracy. Treas. Reg. § 1.461–1, 26 CFR § 1.461–1(a)(2) (1986). Because the Court today applies a rigid version of the "all events" test that retreats from our most recent application of that test, and unnecessarily drives a greater wedge between tax and financial accounting methods, I respectfully dissent.

This case calls for the Court to revisit the issue addressed only last Term in *United States* v. *Hughes Properties, Inc.*, 476 U. S. 593 (1986). At issue in *Hughes Properties* was whether a casino operator utilizing the accrual method of accounting could deduct amounts guaranteed for payment on "progressive" slot machines but not yet won by a playing

---

[7] Respondent has never sought to be treated as an insurance company entitled to take IBNR deductions under the provisions of Subchapter L.

patron. A progressive slot machine has a jackpot whose size increases as money is gambled on the machine. Under Nevada law, a casino operator is prohibited from reducing the amount of the progressive jackpot. We concluded, therefore, that all the events had occurred that determine the fact of the casino operator's liability despite the fact that the jackpot might not be won for as long as four years. We rejected the argument made by the United States that the casino operator's obligation to pay the jackpot arose only upon a winning patron's pull of the handle, even though it was conceivable that the jackpot might never be won:

> "There is always a possibility, of course, that a casino may go out of business, or surrender or lose its license, or go into bankruptcy, with the result that the amounts shown on the jackpot indicators would never be won by playing patrons. But this potential nonpayment of an incurred liability exists for every business that uses an accrual method, and it does not prevent accrual. See, e. g., *Wien Consolidated Airlines, Inc.* v. *Commissioner*, 528 F. 2d 735 (CA9 1976). 'The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not.' *Helvering* v. *Russian Finance & Constr. Corp.*, 77 F. 2d 324, 327 (CA2 1935)." *United States* v. *Hughes Properties, Inc.*, supra, at 605–606.

In my view, the circumstances of this case differ little from those in *Hughes Properties*. The taxpayer here is seeking to deduct the amounts reserved to pay for medical services that are determined to have been provided to employees in the taxable year, whether or not the employees' claims for benefits have been received. The taxpayer's various medical benefits plans provided schedules for the medical and hospital benefits, and created a contractual obligation by the taxpayer to pay for the covered services upon presentation of a claim. The courts below found that the obligation to pay became fixed once the covered medical services were re-

ceived by the employee. See App. 25. Once the medical services were rendered to an employee while the relevant benefit plan was in effect, General Dynamics could not avoid liability by terminating the plan prior to the filing of a claim. *Id.*, at 133–134. Neither could General Dynamics extinguish its liability by firing an employee before the employee filed a claim for benefits. *Id.*, at 87.

It is true, of course, that it was theoretically possible that some employees might not file claim forms. In my view, however, this speculative possibility of nonpayment differs not at all from the speculation in *Hughes Properties* that a jackpot might never be paid by a casino. As we observed in *Hughes Properties*, the potential of nonpayment of a liability always exists, and it alone does not prevent accrual. The beneficiary of a liability always has the option of waiving payment, but a taxpayer is still unquestionably entitled to deduct the liability. An injured employee entitled absolutely to reimbursement for medical services under a workers' compensation statute, for example, may fail to utilize the medical services. The employer, however, has been held to be entitled to deduct the expected medical expenses because the workers' compensation law creates liability. See *Wien Consolidated Airlines, Inc.* v. *Commissioner*, 528 F. 2d 735 (CA9 1976) (holding that accrual basis taxpayer may deduct expected workers' compensation payments in year of injury even though injured workers may not utilize medical benefits). Similarly, any business liability could ultimately be discharged in bankruptcy, or a check might never be cashed by its recipient. There can be no doubt, however, that these remote possibilities alone cannot defeat an accrual basis taxpayer's right to deduct the liability when incurred.

The Claims Court found that the processing of the employees' claims was "routine" and "ministerial in nature," 6 Cl. Ct. 250, 254 (1984), and the majority does not question that finding. *Ante*, at 244, n. 4. Instead, the majority holds that "as a matter of law, the filing of a claim was necessary

to create liability." *Ibid.* Even if, in a technical sense, the Court is correct that the filing of a claim is a necessary precondition to liability as a matter of law, the failure to file a claim is at most a "merely formal contingenc[y], or [one] highly improbable under the known facts," that this Court has viewed as insufficient to preclude accrual and deductibility. 2 J. Mertens, Law of Federal Income Taxation § 12.62, p. 241 (M. Weinstein, R. Donovan, P. Gaveras, H. Piech, & R. Neeld rev. 1985). Indeed, in the very case that first announced the "all events" test, *United States* v. *Anderson*, 269 U. S. 422 (1926), this Court concluded that a taxpayer should deduct a federal munitions tax before the year in which the tax was even assessed—in effect before the Government had made a claim for the tax. The Court recognized that "[i]n a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due," but concluded that otherwise all the events that determined the liability for the munitions tax had occurred. *Id.*, at 441. Similarly, in *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290 (1932), the Court held that an accrual basis taxpayer should immediately include as income a federal payment to railroads created by statute, but neither claimed by the taxpayer nor awarded by the Federal Government until years later. The Court explained that although no railroad had any vested right to payments under the statute until a claim was made by the railroad and awarded by the Interstate Commerce Commission, "[t]he right to the award was fixed by the passage of the Transportation Act. What remained was mere administrative procedure to ascertain the amount to be paid." *Id.*, at 295. Clearly, the right to reimbursement for medical benefits under any of the medical benefits plans at issue in this case arises once medical services are rendered; the filing and processing of a claim is purely routine and ministerial, and in the nature of a formal contingency, as correctly perceived by the courts below.

The holding of the Court today unnecessarily burdens taxpayers by further expanding the difference between tax and business accounting methods without a compelling reason to do so. Obviously, tax accounting principles must often differ from those of business accounting. The goal of business accounting "is to provide useful and pertinent information to management, shareholders, and creditors," while "the responsibility of the Internal Revenue Service is to protect the public fisc." *United States* v. *Hughes Properties, Inc.*, 476 U. S., at 603. Therefore, while prudent businesses will accrue expenses that are merely reasonably foreseeable, for tax purposes the liability must be fixed. But Congress has expressly permitted taxpayers to use the accrual method of accounting, and from its inception in *United States* v. *Anderson, supra*, the "all events" test has been a practical adjustment of the competing interests in permitting accrual accounting and protecting the public fisc. Unfortunately, the Court today ignores the pragmatic roots of the "all events" test and instead applies it in an essentially mechanistic and wholly unrealistic manner. Because the liability in this case was fixed with no less certainty than the range of expenses both routinely accrued by accrual method taxpayers and approved as deductible for tax purposes by this Court and other courts in a variety of circumstances, I respectfully dissent.