T.C. Memo. 2014-146

UNITED STATES TAX COURT

GIANT EAGLE, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11910-12.　　　　　　　　　　Filed July 23, 2014.

Richard I. Halpern and Robert M. Barnes, for petitioner.

Travis Vance III and Anita Goklaney, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:　Respondent determined deficiencies in petitioner's

Federal income tax for 2006 and 2007 (years at issue) of $3,358,226 and

**[\*2]** $313,490,[1] respectively. Petitioner owned and operated supermarkets under the name "Giant Eagle" and gas stations under the name "GetGo". During the years at issue petitioner offered a customer loyalty program by which customers making qualifying purchases at Giant Eagle could earn "fuelperks!" that were redeemable for a discount against the purchase price of gas at GetGo. Petitioner, an accrual method taxpayer, claimed deductions for certain unredeemed fuelperks! for each year at issue. The question before us is whether under the "all events" test of section 461[2] petitioner properly accrued and deducted expenses for the unredeemed fuelperks! If the answer to this question is no, we are asked to decide whether petitioner is entitled to offset certain sales revenues by the estimated costs of future redemptions of such fuelperks! under section 1.451-4, Income Tax Regs.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts and the accompanying exhibits by this reference.

---

[1]Certain monetary amounts are rounded.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] I. Petitioner

Giant Eagle, Inc., is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. Giant Eagle, Inc., and its subsidiaries (collectively, petitioner or Giant Eagle) operate, and were operating during the years at issue, supermarkets and pharmacies under the name "Giant Eagle" and gas stations and convenience stores under the names "GetGo" and "Giant Eagle Express". For each year at issue Giant Eagle filed a consolidated corporate income tax return and used an accrual method of accounting to compute and report its Federal income tax liability.

II. The Fuelperks! Program

During the years at issue Giant Eagle invited customers to participate in a discounted gasoline and diesel fuel promotion called the "fuelperks! program". Under the fuelperks! program, customers could earn fuelperks! by presenting their Giant Eagle Advantage Card (advantage card), a customer loyalty card, when purchasing qualifying goods or services. For every qualifying $50 spent, a customer earned a single fuelperk! Each fuelperk! was redeemable for a 10-cent reduction in the retail price per gallon of gasoline or diesel fuel[3] acquired in one

_____

[3]For convenience we refer hereinafter to diesel and gasoline fuel collectively as gas.

[*4] transaction of up to 30 gallons at GetGo gas stations. To redeem fuelperks!, customers were required to swipe their advantage cards when purchasing gas and elect, by pushing a button, to use their fuelperks! Fuelperks! could be, and were required to be, aggregated, so that all available fuelperks! would be used to reduce the gas price to the greatest extent possible, possibly reducing the price for a gallon of gas to zero. Accumulated fuelperks! in excess of the then-current price per gallon of gasoline would be saved on the customer's advantage card. Fuelperks! expired three months after the last day of the month in which they were earned and could not be redeemed in cash.

III. Tax Returns and Deficiency Notice

Giant Eagle deducted the estimated costs of redeeming a certain portion of the issued fuelperks! that were unexpired and unredeemed at the end of each year at issue (outstanding fuelperks!), in the amounts of $6,160,855 and $1,130,630 for 2006 and 2007, respectively. Respondent issued a deficiency notice disallowing those deductions. Petitioner timely filed a petition with this Court challenging respondent's determination.

**[\*5]**                              OPINION

## I. Burden of Proof

The taxpayer generally bears the burden of proving the Commissioner's determinations are erroneous. Rule 142(a). The burden of proof may shift to the Commissioner if the taxpayer satisfies certain conditions. Sec. 7491(a). Our resolution of this case is based on a preponderance of the evidence, not on an allocation of the burden of proof. Therefore, we need not consider whether section 7491(a) would apply. See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

## II. The All Events Test

Section 162(a) allows taxpayers to deduct all ordinary and necessary business expenses they pay or incur during the taxable year in carrying on any trade or business. Section 461(a) provides that a deduction must be taken for the proper taxable year under the taxpayer's method of accounting. An accrual method taxpayer generally is allowed a deduction for the year in which the taxpayer incurred the expense, regardless of the actual date of payment. Sec. 461(h)(4); sec. 1.461-1(a)(2), Income Tax Regs. Whether an accrual method taxpayer has incurred an expense is determined under the all events test delineated in section 1.461-1(a)(2)(i), Income Tax Regs., which provides:

[*6]   Under an accrual method of accounting, a liability (as defined in §
       1.446-1(c)(1)(ii)(B)) is incurred, and generally is taken into account
       for Federal income tax purposes, in the taxable year in which all the
       events have occurred that establish the fact of the liability, the amount
       of the liability can be determined with reasonable accuracy, and
       economic performance has occurred with respect to the liability.
       * * *

An accrual basis taxpayer claiming that it incurred a liability for Federal income tax purposes must satisfy each of the three requirements under the all events test in order to deduct the liability. Petitioner contends that it meets all the requirements of the all events test with respect to the disputed deductions for the outstanding fuelperks! Respondent argues that petitioner fails the test because it does not satisfy the test's first requirement, among other reasons.[4] More specifically, respondent contends that all the events had not occurred to establish petitioner's liability for the outstanding fuelperks! We agree with respondent for the reasons discussed below.

We have generally looked to and followed two leading Supreme Court cases, United States v. Gen. Dynamics Corp., 481 U.S. 239 (1987), and United States v. Hughes Props., Inc., 476 U.S. 593 (1986), when interpreting the first prong of the all events test of section 1.461-1(a)(2), Income Tax Regs. See, e.g.,

_____

[4]Respondent concedes that petitioner meets the second requirement, i.e., or the reasonable accuracy prong of the all events test.

**[\*7]** <u>Spitzer Columbus, Inc. v. Commissioner</u>, T.C. Memo. 1995-397; <u>Dana Distribs., Inc. v. Commissioner</u>, T.C. Memo. 1988-514, <u>aff'd</u>, 874 F.2d 120 (2d Cir. 1989); <u>see also</u> <u>Simplified Tax Records, Inc. v. Commissioner</u>, 41 T.C. 75 (1963). While these cases are factually distinct from this case, they provide helpful context for evaluating when a liability becomes fixed for purposes of the all events test.

In <u>Gen. Dynamics Corp.</u>, an accrual basis taxpayer self-insured its employees' medical plan. To obtain reimbursement for medical treatment under the plan, employees were required to submit claim forms with satisfactory proof of their claims. The taxpayer asserted that it could deduct the estimated costs of employees' potential claims for reimbursement existing at the end of the tax year but not yet paid. The Supreme Court found that the employer's liability to make a payment under its self-insured medical plan was not fixed until an employee filed a properly documented claim. The Supreme Court reasoned that the filing of the claim was not a mere technicality but, rather, was a condition precedent to the employer's liability. In this regard, the Supreme Court noted that, for various reasons, covered individuals might not file claims for reimbursement to which they are plainly entitled. Since the last event necessary to fix the liability in <u>Gen.</u>

**[*8]** <u>Dynamics Corp.</u> had not occurred by the end of the tax year, the Supreme Court held that the first prong of the all events test was not met.

In <u>Hughes Properties</u>, the taxpayer indirectly owned and operated slot machines that had progressive jackpots. A Nevada gaming regulation prohibited the taxpayer from reducing the payoff without paying out the jackpot. The taxpayer using the accrual method of accounting sought to deduct the annual increase in the jackpot payoff amounts on the progressive slot machines not yet won by the end of the tax year. The Supreme Court held the taxpayer's obligation to pay the amount of the jackpot that had already accrued was irrevocable under State law and that the liability was thus fixed for purposes of the all events test. In so doing, it recognized that the jackpot might continue to grow for a prolonged period and that it was possible for the casino to go bankrupt or cease business before the jackpot was ever won.

Respondent contends that petitioner's liability for fuelperks! becomes fixed when they are redeemed. Petitioner argues that its liability for fuelperks! becomes fixed when they are earned. We agree with respondent for the reasons explained below.

Petitioner argues that the fuelperks! program constituted a unilateral contract under which it became legally obligated to redeem fuelperks! as they were

**[*9]** accumulated, making its liability for the outstanding fuelperks! fixed at the end of each year at issue. We disagree. Under the fuelperks! promotion, the redemption of fuelperks! was structured as a discount against the purchase price of gas. Consequently, the purchase of gas was necessarily a condition precedent[5] to the redemption of fuelperks!

To be sure, the redemption of fuelperks! could conceivably discount the purchase price to zero. But even so, the right to redeem fuelperks! without paying to purchase gas (i.e., for a free tank of gas) would be contingent on the setting of the retail price of gas immediately before the purchase. Accordingly, whether a customer paid something for the purchase of gas or nothing, petitioner's obligation to redeem fuelperks! was subject to a condition precedent that could be satisfied only after the close of petitioner's tax year. We find that petitioner's liability for outstanding fuelperks! became fixed upon their redemption, not when the customer earned the fuelperks! as petitioner contends. We thus hold that the claimed deductions for the outstanding fuelperks liabilities do not satisfy section 461(h)(4) and section 1.461-1(a)(2), Income Tax Regs.

---

[5]A condition precedent is some act or event that must occur before the duty of immediate performance of a promise arises. 17A Am. Jur. 2d, Contracts, sec. 458 (2014).

[*10] III.  The Exception to the All Events Test

An exception to the requirements of section 1.461-1(a)(2), Income Tax Regs., is included in section 1.451-4(a)(1), Income Tax Regs., which provides:

> If an accrual method taxpayer issues trading stamps or premium coupons with sales, or an accrual method taxpayer is engaged in the business of selling trading stamps or premium coupons, and such stamps or coupons are redeemable by such taxpayer in merchandise, cash, or other property, the taxpayer should, in computing the income from such sales, subtract from gross receipts with respect to sales of such stamps or coupons (or from gross receipts with respect to sales with which trading stamps or coupons are issued) an amount equal to--
> > (i) The cost to the taxpayer of merchandise, cash, and other property used for redemption in the taxable year,
> 
> > (ii) Plus the net addition to the provision for future redemptions during the taxable year (or less the net subtraction from the provision for future redemptions during the taxable year).

The regulation's purpose is to match sales revenues with the expenses incurred in generating those revenues, and taxpayers are entitled to a present deduction for only the portion of the coupons that will eventually be redeemed.  See Mooney Aircraft, Inc. v. United States, 420 F.2d 400, 411 (5th Cir. 1969); Tex. Instruments, Inc. v. Commissioner, T.C. Memo. 1992-306.

Petitioner contends that section 1.451-4(a)(1), Income Tax Regs., applies and it is thus allowed to offset certain sales revenues by its estimated future costs of redeeming outstanding fuelperks!  Respondent contends that the regulation does

**[*11]** not apply because, among other reasons, fuelperks! were not redeemable in "merchandise, cash, or other property". We agree with respondent for the reasons discussed below.

Respondent cites Rev. Rul. 78-212, 1978-1 C.B. 139. Revenue rulings are not substantive authority; however, we may respect the ruling in accordance with its power to persuade. See PSB Holdings, Inc. v. Commissioner, 129 T.C. 131, 142 (2007).

In Rev. Rul. 78-212, supra, a taxpayer using the accrual method of accounting issued with the sale of products, coupons that could be redeemed for a discount on the sale prices of products purchased in the future. The Commissioner determined that those coupons were not "redeemable in merchandise, cash, or other property" because the redemption of the coupons was conditioned on an additional purchase of the retailer's product by the consumer. The Commissioner reasoned that applying the section in such circumstances would be inconsistent with the section's purpose--to match sales revenues with expenses incurred to generate those revenues. According to the revenue ruling, this is because the retailer has no obligation to redeem the coupon until the additional purchase-- making the coupon expense attributable to the additional purchase and not to the initial purchase with which the coupon was issued.

[*12]  Allowing a present deduction with respect to redemptions conditioned on an additional purchase can result in a mismatching of expenses and revenues, contrary to the regulation's primary purpose.  Fuelperks! are stated in terms of a discount on the purchase price of merchandise.  Indeed, each fuelperk! is redeemable for a 10-cent reduction to the purchase price per gallon of gas.  As previously mentioned, we recognize that fuelperks! discounts can be combined to potentially offset the entire purchase price of a gallon of gas; however, this does not cause them to lose their nature as discounts.  Accordingly, as was the case with the coupons issued with sales in the ruling, the redemption of fuelperks! is conditioned on a subsequent purchase, making them not redeemable for merchandise, cash, or other property.  We therefore hold that petitioner is not entitled to offset the estimated future costs of redeeming fuelperks! against sales revenues under section 1.451-4(a)(1), Income Tax Regs.[6]

---

[6]We note that even if sec. 1.451-4(a)(1), Income Tax Regs., applied to that portion of the outstanding fuelperks!, if any, that would potentially be redeemed without any additional consideration (i.e., for a free tank of gas), petitioner still would not be entitled to offset the estimated costs of redeeming those fuelperks! This is because petitioner has not substantiated that amount and the record does not reflect any reasonable basis on which the Court could estimate that amount.

**[*13]** IV.  <u>Conclusion</u>

Petitioner is not entitled to a deduction or gross revenue offset for the outstanding fuelperks!  Thus, we will sustain the deficiency respondent determined for each year at issue.

We have considered all remaining arguments the parties made and, to the extent not addressed, we find them to be irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.