[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14312
Non-Argument Calendar
_____

Agency No. 22469-11


SCOTT C. RONNING,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
_____

(October 9, 2020)

Before GRANT, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

The personal representative of the estate of Scott C. Ronning[1] appeals the

Tax Court's decision determining a deficiency in income tax due from Ronning

and an associated accuracy-related underpayment penalty.  For the reasons

discussed below, we affirm.

I.

Ronning petitioned the Tax Court to challenge the IRS's determination of

income tax deficiencies for 2005, 2006, 2007, and 2008, and associated penalties

for 2007 and 2008.  He contended, among other things, that his 2007 tax return

correctly reported that the cost of goods sold for one of his businesses, Atlanta Site

Consultants, LLC (ASC) (a disregarded entity for federal tax purposes), exceeded

$7 million, resulting in a net operating loss of nearly $2 million for ASC and a

significant net loss for Ronning.  Ronning amended his 2005 and 2006 tax returns

to carry back portions of his 2007 net loss, and he carried forward a portion of the

loss on his 2008 tax return.

The IRS determined, however, that ASC's 2007 cost of goods sold was $0.

Consequently, the IRS calculated that ASC—and, in turn, Ronning—had no net

---

[1] Although this appeal nominally was filed on behalf of "Petitioner Scott C. Ronning, Deceased," the proper party is Harlan L. Paul, Personal Representative of the Estate of Scott Ronning, who was substituted as the petitioner after Ronning died while his case was pending in the Tax Court. We infer Paul's intent to appeal from the notice of appeal naming Ronning as the appellant. *See* Fed. R. App. P. 3(c)(4).  Additionally, we note that although Ronning and his then-wife filed their taxes jointly for the relevant years, Ronning's former wife did not challenge the IRS's notice of deficiency and is not a party to this litigation.  For convenience, we refer to the appellant (and the taxpayer) as "Ronning" throughout this opinion.

operating loss for 2007 and no allowable carry-back or carry-forward loss. The IRS contended, therefore, that Ronning owed income tax for 2005, 2006, 2007, and 2008, as well as associated accuracy-related penalties.

Because Ronning's business records were destroyed in 2009 after he failed to pay storage fees at the facility where he kept them, Ronning relied in part on bank records and a personal bankruptcy petition he filed in 2009 to reconstruct business expenses and cost of goods sold for 2007. Based on the bank records, the IRS determined that Ronning had substantiated an additional approximately $4.1 million in expenses that offset his income for 2007 and reduced his income tax deficiency. But the IRS objected to the use of Ronning's 2009 personal bankruptcy petition to substantiate any portion of ASC's 2007 cost of goods sold.

As relevant to this appeal, Ronning argued at trial that the bankruptcy petition substantiated additional cost of goods sold (or business expenses) in the form of interest that he contended had accrued on 12 bank loans listed as unsecured debts in the petition. For each debt, the bankruptcy petition listed the name of the creditor, a brief description of the debt (for example, "Personal Guarantee – Daves Creek, LLC"), the amount of the debt, and whether or not a codebtor existed.

Based on the description of the debts in the bankruptcy petition, Ronning contended that the debts were loans made to some of Ronning's other businesses—

3

not ASC—and that Ronning had personally guaranteed the loans. Ronning's position at trial was that the loans had been defaulted on sometime before the bankruptcy petition was filed in May 2009 and that Ronning was personally liable for interest that accrued on the loans after default. In the alternative, he argued that the interest that accrued before default should "flow through" to his tax return either (1) on the profit and loss statement (Schedule C) for ASC because ASC was "the principal business that he was operating" and the other businesses were "effectively subsidiaries" of ASC that were "really almost holding companies for a given project," or (2) directly as a deductible business expense on his 1040 return, because if ASC didn't own the businesses, he did.

After trial, the Tax Court issued an opinion finding that Ronning had failed to substantiate additional costs of goods sold or business expenses for ASC in 2007 beyond the amount that the IRS had conceded. The Tax Court therefore sustained a (reduced) 2007 income tax deficiency and a corresponding accuracy-related penalty against Ronning. This is Ronning's appeal.

## II.

Ronning's sole argument on appeal is that the Tax Court clearly erred in finding that (1) he was a cash-method taxpayer, so he could not deduct the interest that had accrued on the 12 bank loans but had not been paid, and (2) even if he were an accrual-method taxpayer, he had not shown that the interest accrued to

him personally as the guarantor of the debts during the 2007 tax year.[2]  Because we conclude that the Tax Court's first finding was not clearly erroneous, we need not address its second, alternative finding.

"We review the Tax Court's legal conclusions de novo, and its factual findings for clear error."  *Highpoint Tower Tech. Inc. v. Comm'r*, 931 F.3d 1050, 1056 (11th Cir. 2019).  "A finding of fact is clearly erroneous if the record lacks substantial evidence to support it, such that our review of the entire evidence leaves us with the definite and firm conviction that a mistake has been committed."  *Champions Retreat Golf Founders, LLC v. Comm'r*, 959 F.3d 1033, 1035 (11th Cir. 2020) (citation omitted).  Generally, the taxpayer bears the burden of proving that the IRS's determination of a tax deficiency is arbitrary or erroneous.  *Blohm v. Comm'r*, 994 F.2d 1542, 1548–49 (11th Cir. 1993).  Likewise, the taxpayer bears the burden of proving that he is entitled to a deduction, and the amount of the deduction.  *See United States v. Gen. Dynamics Corp.*, 481 U.S. 239, 245 (1987); *Gatlin v. Comm'r*, 754 F.2d 921, 923 (11th Cir. 1985).

---

[2] Ronning does not challenge the Tax Court's determination that other debts listed in the bankruptcy petition did not reduce his tax liability, or its finding that the information Ronning provided about the 12 debts at issue did not substantiate an increased cost of goods sold (as opposed to a business expense).  Nor has he contested the Tax Court's determination that a 20% accuracy-related penalty applied, pursuant to 26 U.S.C. § 6662(a), to any tax deficiency for 2007.  He has therefore abandoned any argument on those issues.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

Here, Ronning argues that the Tax Court clearly erred in finding that he was a "cash-method" taxpayer—or at least, that he had not met his burden of showing that he was an "accrual-method" taxpayer. When a taxpayer uses the cash method of accounting, "expense deductions are normally to be taken in the taxable year when paid." *Frysinger v. Comm'r*, 645 F.2d 523, 526 (5th Cir. 1981). An accrual-method taxpayer, on the other hand, can deduct an expense in the tax year when the expense was incurred. *See Karr v. Comm'r*, 924 F.2d 1018, 1025 (11th Cir. 1991). Because Ronning acknowledged that the interest expenses he sought to deduct were never paid, he was required to show that he used the accrual method of accounting in order to deduct the interest that accrued during the relevant tax years.

Ronning argues that he should have been deemed an accrual-method taxpayer because the Schedule C for ASC filed with his 2007 tax return indicated that ASC used the accrual method of accounting. But the fact that ASC used the accrual method does not show that Ronning, as an individual, also used the accrual method when the borrowers defaulted and he became personally liable for the debts listed in the bankruptcy petition. Ronning has not pointed to any evidence in the record indicating that he did so, and when the IRS asserted at trial that Ronning was a cash-method taxpayer, he did not contest that characterization. On this record, the Tax Court's finding that Ronning was a cash-method taxpayer was not

6

clearly erroneous. *See Curtis Inv. Co., LLC v. Comm'r*, 909 F.3d 1339, 1347 (11th Cir. 2018) ("Under the clear error standard, 'where there are two permissible views of the evidence, the tax court's choice between them cannot be clearly erroneous.'" (citation omitted)). *See also Gen. Dynamics Corp.*, 481 U.S. at 245 (petitioner bears the burden of proving that he is entitled to a deduction). And because the Tax Court did not clearly err in finding that Ronning was a cash-method taxpayer, we need not address Ronning's argument that the Tax Court clearly erred in its alternative finding that Ronning had not shown that the interest accrued to him during the relevant tax years.

To the extent that Ronning argues that the accrued interest should have been counted as a deductible business expense on ASC's Schedule C, we conclude that the Tax Court's contrary finding—that Ronning had not shown that any disregarded entity wholly owned by him (including ASC) was liable for the interest on the loans—was not clearly erroneous. The bankruptcy petition listed eight different businesses, none of which was ASC, as the borrowers on the loans. Ronning's accountant testified that ASC was "the operational company" for Ronning's real estate development business, and that ASC had arrangements with Ronning's other businesses to develop the properties held by the other entities, which included paying the interest on property-related loans. But this testimony was inconsistent with Ronning's petition—filed before Ronning died, presumably

7

based on information provided by Ronning—which stated that ABG Holdings I, LLC owned and managed his other real estate development companies. The petition also stated that ABG was responsible for bank loans related to many of Ronning's other real estate businesses, and that neither ABG nor Ronning was able to pay the loans after the real estate market crashed in 2007. These factual allegations imply that ABG was responsible for some or all of the loans at issue before they defaulted. Furthermore, the bankruptcy petition identified all eight of the borrowing entities—but not ASC—as codebtors, undermining Ronning's contention at trial that ASC was responsible for all of the loans. Ronning's tax returns also conflict with his assertion that the income from all of his other businesses flowed through ASC, because they include separate schedules reporting profit or loss from several partnerships, including ABG.

Assuming for the sake of argument that some interest on some of the loans accrued to ASC as a deductible business expense, Ronning did not meet his burden of showing the amount of such interest. *See Gatlin*, 754 F.2d at 923. For starters, Ronning's assumption at trial that interest began accruing on each loan within 90 days after the creation of the borrowing entity was pure speculation. Any guess as to when interest stopped accruing to the business and began accruing to Ronning personally as guarantor would be similarly speculative, because the record does not show when the loans went into default.

8

Furthermore, the entities listed as borrowers on several of the loans were identified in Ronning's tax returns as partnerships for tax purposes. Each partner in a partnership calculates its income tax based on its distributive share of the partnership's income, losses, and deductions. *See* 26 U.S.C. § 702. And the tax code provides that a "partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership" for the relevant tax year. *Id.* § 704(d). But neither Ronning's tax returns nor the bankruptcy petition named the partners in each entity or stated the partners' distributive shares or their respective bases in the partnership. So even if we were to assume—without evidentiary support—that ASC was one of the partners in each of the relevant partnerships, we cannot determine what portion of the accrued interest, if any, constituted ASC's derivative share or whether any net loss to ASC was limited by ASC's basis in the partnership.

We conclude that Ronning failed to meet his burden of proving that the IRS's determination of his tax deficiency was incorrect, or that he was entitled to an additional business expense deduction for the relevant tax years. We therefore affirm.

**AFFIRMED.**

9