**ALBANY CAR WHEEL COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT**

Docket No. 90211. Filed August 8, 1963.

*Albert R. Mugel* and *Irving L. Innerfield,* for the petitioner.
*John E. McDermott, Jr.,* for the respondent.

834

OPINION

RAUM, *Judge:* On June 9, 1955, petitioner acquired by purchase the operating assets of a corporation engaged in the business of manufacturing and selling chilled iron wheels. The Commissioner's adjustments here in issue relate to his reduction in the basis of the assets thus acquired, which in turn resulted in a disallowance of part of the

cost of goods sold as well as in a reduction of the depreciation allowance. The total reduction in basis presently in dispute is $46,089.05.[3]

The starting point in this case is section 1012 of the 1954 Code which provides that "The basis of property shall be the cost of such property * * * [except in certain situations not applicable here]." Accordingly, the decisive question before us is: What did petitioner pay for the assets that it acquired from the Old Co.?

According to the stipulation of facts and the evidence before us, petitioner paid $15,000 in cash on a note to the Old Co., and assumed certain specified liabilities of the Old Co. in the net amount of $74,360.35. The Commissioner insists that the sum of these two figures, namely, $89,360.35, represents the "cost" of the assets purchased. Petitioner, on the other hand, claimed a cost of $137,543.95,[4] which was the book value of the assets in the hands of the Old Co. Petitioner undertook to support its higher cost basis by contending that, in addition to the foregoing $89,360.35 which it paid for the assets in the manner described, it also assumed an obligation of the Old Co. for severance pay to its employees under a union contract, that such obligation was equal to at least the difference between the $89,360.35 and the book value of the assets in the hands of the Old Co., and that it therefore represented an additional item of cost for the assets which it thus acquired. We disagree. We hold that although petitioner did in fact procure the cancellation of the Old Co.'s contingent liability in respect of severance pay by executing a new and different type of contract with the union, petitioner's obligation under the new contract was of such contingent character that it could not be considered part of the cost of the assets which it acquired, and that any such obligation which might actually result in a fixed liability in a later year may properly be taken into account in petitioner's behalf as a deduction in such later year.

The Old Co.'s contract with the union provided that, upon permanent closing of the plant, employees with from 1 to 5 years of service were to be allowed 4 weeks' severance pay and employees with 5 or more years of service were to be allowed 8 weeks' severance pay. It had 111 employees in 1955, and when Cooley was negotiating for the purchase of the assets, he was naturally concerned about any liability that might result in respect of severance pay, particularly since the chilled iron wheel industry was moribund. Indeed the evidence shows that he had calculations made showing that if the plant

[3] The Commissioner disallowed $48,183.60; however, as a result of a concession by the taxpayer (see footnote 2, *supra*), $2,094.55 thereof is no longer in controversy. As to the remaining $46,089.05, there is no controversy between the parties in respect of its allocation to inventory and depreciable assets if it be held that the Commissioner was correct in disallowing the total amount as part of cost of all the assets acquired.

[4] It now concedes that this amount may be reduced by $2,094.55, the amount of the error referred to in footnote 2, *supra*.

were to close at that time, the liability for severance pay would be approximately $48,000 in respect of the employees then working for the Old Co. Had the petitioner assumed fixed obligations in any such amount we would agree that such assumption would constitute a part of its cost of the assets acquired. But that is not what occurred.

In the first place, and perhaps of lesser importance, the Old Co.'s contract in respect of severance pay spelled out a liability to employees *as of the time of closing.* There was no liability for severance pay in respect of those employees who had died or who had voluntarily terminated their employment.[5] In the second place, and of greater significance here, petitioner did not assume the Old Co.'s liabilities in respect of severance pay. While it is true that section XXII of petitioner's new agreement with the union recites that "The Union recognizes that by entering into this Agreement the present Company has in effect assumed substantially the same obligations to the Union and to the employees as those which had been undertaken by the predecessor Company," the fact is that petitioner did not assume the Old Co.'s obligations and that its own obligations under the new contract were radically different from those of the Old Co.

Petitioner's obligations, set forth in section XIV of the new contract, revolved primarily around *notice.* Under these provisions petitioner's liability to its employees at the time of permanent closing of the plant could be met by giving 6 weeks' written notice to employees with from 1 to 5 years of service and 12 weeks' written notice to employees with 5 or more years of service.[6] Petitioner was liable for severance pay under the new contract only where it failed to give the specified notice. And the record shows that when petitioner in fact determined to close its plant in 1960 it gave the required notice to its employees. As a consequence, it paid their wages for work performed during the 6- or 12-week periods prior to closing, but they received no severance pay whatever. Those wages were deducted in petitioner's 1960 income tax return, in determining cost of goods sold in that year. Petitioner recognizes that it cannot have it both ways—i.e., it concedes that if it is entitled to have severance pay included as part of the cost of assets acquired in 1955, the deduction for

---

[5] Thus, of the 111 employees in 1955, only 58 remained in 1960 when the plant was actually closed, and if petitioner had in fact assumed the Old Co.'s obligations under the contract in force in 1955, its contingent liability in respect of the 111 employees would have become fixed only as to 58 of them. And of course, any liability to employees hired after petitioner began business could not properly be regarded as part of the cost of the assets acquired from the Old Co.

[6] The union construed the contract under the seniority provisions as applying also to employees who had been laid off within 2 years, and, under this interpretation, petitioner was compelled to rehire 14 employees for periods of 6 weeks each at the time of closing in 1960. However, the evidence discloses that every one of these 14 employees was originally hired by petitioner several years after it commenced business in 1955, and petitioner had incurred no obligation as to them, contingent or otherwise, when it acquired the assets of the Old Co.

wages paid in 1960 must be reduced by a like amount. However, we think that petitioner's method of reporting for 1960 was correct, that the wages paid in that year during the notice period prior to closing were properly deductible in 1960, and that they were not in any part a component of the "cost" of the assets acquired in 1955.

Of course, there was always the possibility that petitioner might become liable for severance pay, if, for example, the plant should burn down and the employees were thrown out of work without having received the required notice. But petitioner protected itself against this contingency by insurance, and the premiums paid therefor were plainly deductible as a business expense. We think that petitioner's liability for severance pay, in view of the notice provisions, was so speculative that its obligations under the union contract cannot fairly be regarded as part of the "cost" of the assets acquired from the Old Co. To the extent that any liability might accrue in a later year as a result of that contract, payments thereunder may properly be taken into account at such later time; they may not be used to increase the cost of goods sold in an earlier year or to increase the amount of the depreciation allowance for such earlier year.

Both parties have cited a number of cases, which we have examined and considered. However, we find that none of them is sufficiently close to the present case to warrant discussion.

*Decision will be entered for the respondent.*

