## TRANSAMERICA CORPORATION, Plaintiff–Appellant,

v.

## UNITED STATES of America, Defendant–Appellee.

### No. 90–16674.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1991.

Submission Withdrawn Feb. 5, 1992.

Resubmitted Feb. 26, 1993.

Decided July 7, 1993.

---

Cameron W. Wolfe, Jr., Orrick, Herrington & Sutcliffe, San Francisco, CA, for plaintiff-appellant.

Kenneth W. Rosenberg, Tax Division, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: HUG, HALL, and O'SCANNLAIN, Circuit Judges.

HUG, Circuit Judge:

This is an appeal by Transamerica from a judgment disallowing a refund of income taxes attributable to its former subsidiary, United Artists Corporation ("UA"), for the production of films that it acquired and distributed for exhibition. The Internal Revenue Service ("IRS") assessed income tax deficiencies for depreciation disallowed for the years 1971, 1972, and 1973. Transamerica paid the additional tax and sued for a refund. The sole issue on appeal is the interpretation of a formula established in Rev.Rul. 60–358 for the depreciation of the cost of production of television and motion picture films. The question of interpretation focuses on the proper treatment of production costs that are paid as a percentage of the income earned from the exhibition of the films. The district court entered summary judgment for the Government, disallowing the refunds. 670 F.Supp. 1454. We reverse.

Jurisdiction in the district court was based on 28 U.S.C. § 1346(a)(1) and our appellate jurisdiction is based on 28 U.S.C. § 1291.

I.

For the years in issue, Transamerica owned UA, which contracted for the production of motion picture films and distributed them for exhibition. The income tax due on the profit from the distribution of the films is the matter in contention.

Transamerica paid deficiency assessments and filed two actions for refund of taxes and interest paid for the years 1971, 1972, and 1973. These actions originally involved numerous issues, which have since been resolved. The dispute involves the depreciation expense attributable to films which were distributed and for which income was received in those tax years. The actions were consolidated and submitted to the court for decision on cross-motions for summary judgment based on stipulated facts. The issue on appeal, being strictly a legal issue, is subject to *de novo* review.

## II.

UA contracted with third parties for the production of the films it distributed. It contracted to pay certain producers, writers, directors, actors, and others a flat amount plus a percentage of the film's future gross receipts or net profits. The percentage portions of these payments are known as "participations." During this period, UA also operated under collective bargaining agreements with guilds representing writers, actors, directors, and others who contributed to the production of the films, which required payment to those guilds of a percentage of all revenues it received from the television exhibition of each film it distributed. These payments are known as "residuals."

The profit that UA makes on the distribution of a film is the revenue it earns from exhibition, less the costs incurred under these contracts for production and its distribution expenses. The film that is produced is considered to be a capital asset. The Internal Revenue Code ("IRC") provides that taxpayers may not deduct the cost of purchasing or producing a capital asset in the year in which the costs are incurred. Instead, the costs must be allocated by means of depreciation expense over the period during which the capital asset will produce income. The objective is to allocate as evenly as possible the cost of the asset with the flow of the income it produces.

In recognition of the special circumstances involved with television films, the IRS issued Rev.Rul. 60–358, 1960–2 C.B. 68, allowing depreciation expense to be calculated on a formula based upon the forecast of future income. In Rev.Rul. 64–273, 1964–2 C.B. 62, the IRS acknowledged that this method of calculating depreciation also is applicable to motion picture films.

Under this method, the taxpayer must forecast the total amount of income that the motion picture will produce over its entire lifetime. The taxpayer is then allowed to take a depreciation deduction each year in proportion to the amount of income received in that year relative to the total amount of income forecasted.

The interpretation of Rev.Rul. 60–358 is the crux of this dispute. The revenue ruling provides in pertinent part as follows:

It has come to the attention of the Internal Revenue Service that the methods of computing depreciation described in section 167(b) of the Code are in most cases inadequate when applied to television films, resulting in a distortion of income on the returns filed by taxpayers deriving income from such films. This distortion is caused by a strikingly uneven flow of income, earned by groups of programs within the series, resulting from contract restrictions, methods of distribution and audience appeal of the programs.... [T]he usefulness of such assets in the taxpayer's trade or business is measurable over the income it produces and cannot be adequately measured by the passage of time alone. Therefore, in order to avoid distortion, depreciation must follow the "flow of income."

Some producers of television films have used the so-called "cost recovery" method in reporting their income. By use of this method, no taxable income is reported until the income from the films exceeds the cost thereof. However, such "cost recovery" method is not acceptable for Federal income tax purposes.

After an extensive study and consideration of the matter, the Service has concluded that the so-called "income forecast" method is readily adaptable in computing depreciation of the cost of television films without producing any serious distortion of income. This method requires the applica-

tion of a fraction, the numerator of which is the income from the films for the taxable year, and the denominator of which is the forecasted or estimated total income to be derived from the films during their useful life, including estimated income from foreign exhibition or other exploitation of such films. The term "income" for purposes of computing this fraction means income from the films less the expense of distributing the films, not including depreciation. This fraction is multiplied by the cost of films which produced income during the taxable year, after appropriate adjustment for estimated salvage value. The "income forecast" method may be illustrated as follows:

Example: Certain television films which produced income within the first taxable year cost 800x dollars, after appropriate adjustment for estimated salvage value. The income therefrom for the first taxable year was 600x dollars; second year 150x dollars; and third year, 300x dollars. Total estimated income to be derived from the films 1200x dollars.

$$\frac{600x \text{ dollars}}{1200x \text{ dollars}} \times 800x \text{ dollars} = 400x \text{ dollars} \quad \text{(first year's depreciation)}$$

$$\frac{150x \text{ dollars}}{1200x \text{ dollars}} \times 800x \text{ dollars} = 100x \text{ dollars} \quad \text{(second year's depreciation)}$$

$$\frac{300x \text{ dollars}}{1200x \text{ dollars}} \times 800x \text{ dollars} = 200x \text{ dollars} \quad \text{(third year's depreciation)}$$

The ruling goes on to explain how income forecasts can be adjusted in subsequent years if it is found that the income forecast was substantially overestimated or underestimated. The issue before us is the application of the basic formula above-quoted. The essential question is whether the "cost of the films" is to include the cost of the percentage "participations" and "residuals." The taxpayer contends it is; the IRS contends it is not. The practical effect of including participations and residuals in the cost factor is to permit the depreciation of all costs of production in order to match expenses evenly with income.

### III.

The costs of the participations and residuals, in actuality, are clearly costs of producing the film and not expenses incurred in distribution. Transamerica followed generally accepted accounting principles in utilizing the "income forecast method" to spread these participation and residual costs proportionately over the flow of the net income derived from the film.[1] Furthermore, this seems to

1. The American Institute of Certified Public Accountants conducted a special study through a committee to determine the most appropriate method of accounting for motion picture income. As a part of that study, they discussed the participation and residual liabilities and the manner in which they should be treated. The Committee considered three methods. The "contract" method, by which the costs are expensed only when gross receipts or net profits reach a level which requires that the participations and residuals be paid, is the method the Government contends should have been used by Transamerica. The other two methods, the "capitalization" method and the "accrual" method, provide that participation and residual liabilities should be estimated based on the forecasts of lifetime film revenues and then amortized and expensed using the income forecast method. Both spread the total production costs, including participations and residuals, over the flow of income evenly. These methods are identical in their impact on the income statement although they have different effects on a taxpayer's balance sheet. The stipulation of facts in this case states: "[t]he only issue between the parties is whether the basis of a film for depreciation purposes can include projected participation and residual costs that are not yet due and payable." Thus, in this appeal, we are discussing an application of the capitalization method. The Committee recommended and the American Institute of Certified Public Accountants eventually adopted as a standard either the capitalization or

be in accord with the imperative of the revenue ruling that "in order to avoid distortion, depreciation must follow the 'flow of income.'" Rev.Rul. 60–358.

Rev.Rul. 60–358, in explaining the formula, deducts the anticipated expenses of distribution in calculating the net revenue forecast to be used, but allocates the cost of production as depreciation. There are recognized uncertainties in the formula. The gross revenue is an estimate and the distribution expenses are estimates. Thus, the net revenue factor in the formula is an estimate, but is accepted for use in calculating depreciation. The fact that the element of the cost of production attributed to participations and residuals is dependent upon the net revenue estimate should not preclude the inclusion of that cost element in the formula. The Government and Transamerica agree that the amount of participations and residuals can be accurately calculated from the net income projection. Thus, with the net income projection being a given factor in the formula, the participations and residuals are also a given factor in that formula. In order for the formula to operate as designed, so as to spread the costs of production evenly over the flow of income derived from the film, all

costs of production, including participations and residuals, must be included.

The Government contends that because the amounts of the participations and residuals are uncertain, they should not be included in the cost to be depreciated, but rather should be deducted as expenses when they become due and payable under the various contracts.[2] The Government approach does not result in spreading the costs of production evenly over the flow of income as does the American Institute of Certified Public Accountants approach, which was utilized by Transamerica. This is demonstrated by the following examples using the Rev.Rul. 60–358 formula.

Assume that the projected net revenue is $1,200,000, and that the pre-release cost is $600,000. The projected profit would be $600,000. Further assume that the participations and residuals require payments of $33\frac{1}{3}\%$ of the profits, being $200,000. Thus, pre-release costs of $600,000 plus $200,000 in participations and residuals would equal $800,000. Finally, assume that $300,000 a year for four years is realized in income net of distribution expenses. Transamerica's and the Government's application of the Rev. Rul. 60–358 formula would be as follows:

*Transamerica's Application*

| Net Income | | Total Cost | Depreciation |
|---|---|---|---|
| | | First Year | |
| $\frac{\$300,000}{\$1,200,000}$ | × | $800,000 = | $200,000 |
| | | Second Year | |
| $\frac{\$300,000}{\$1,200,000}$ | × | $800,000 = | $200,000 |
| | | Third Year | |
| $\frac{\$300,000}{\$1,200,000}$ | × | $800,000 = | $200,000 |
| | | Fourth Year | |
| $\frac{\$300,000}{\$1,200,000}$ | × | $800,000 = | $200,000 |
| | | | $800,000 |

accrual method and rejected the contract method.

**2.** When participations and residuals are based on gross revenue, their treatment as ordinary expenses or as depreciation would make no practical difference because they would become due and payable as the annual gross revenue is received. The Government agrees that they would become accrued expenses properly deductible even though paid in a subsequent year. Thus, whether these costs are deducted as ordinary expenses or as depreciation makes no practical difference when they are based upon gross revenue. It is when the participations and residuals are dependent upon net profits that the distinction arises because they do not become contractually due and payable until the pre-release costs of production have been recovered, that is, until the cumulative net revenue exceeds the pre-release costs, resulting in profit.

*Government's Application*

| Net Income | | Total Cost | Depreciation | | Expense |
|---|---|---|---|---|---|
| | | **First Year** | | | |
| $300,000 | × | $600,000 | $150,000 | | |
| $1,200,000 | | | | | |
| | | **Second Year** | | | |
| $300,000 | × | $600,000 | $150,000 | | |
| $1,200,000 | | | | | |
| | | **Third Year** | | | |
| $300,000 | × | $600,000 | $150,000 | + | $100,000 |
| $1,200,000 | | | | | |
| | | **Fourth Year** | | | |
| $300,000 | × | $600,000 | $150,000 | + | $100,000 |
| $1,200,000 | | | $600,000 | | $200,000 |

It is apparent that under Transamerica's method of depreciation, the cost of production is allocated proportionately to the flow of net income, which fulfills the intent of Rev. Rul. 60–358. The Government's method permits the deduction of the element of cost due to participations and residuals on the "contract" method, which allows the deduction as an expense only after the pre-release costs of $600,000 have been recovered. Thus, the deduction of the total production cost does not follow the flow of income, which is the reason this method was rejected by the American Institute of Public Accountants in favor of capitalizing and depreciating these costs.

IV.

The Government argues that the participations and residuals cannot be included in the cost basis for depreciation because the participations and residuals are contingent on whether the film makes a net profit. However, the reason for not allowing contingent liabilities to fund part of the cost basis for depreciation does not pertain to this situation where the IRS has mandated an Income Forecast Formula for depreciation. The major concern in the non-formula cases is that the taxpayer would be allowed to depreciate costs that will never be incurred. This is not possible under the Income Forecast Formula.

A brief discussion of the pertinent statutory provisions is warranted. Section 167(a) of the Internal Revenue Code provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear, and obsolescence, of property used in a trade or business or held for the production of income. 26 U.S.C. § 167(a). Section 167(g) provides that depreciation deductions are determined by reference to the adjusted basis provided in section 1011 for determining gain on the sale or other disposition of property. 26 U.S.C. §§ 167(g) (redesignated as § 167(c) (1990)), 1011 (1988). Section 1011 refers to section 1012, which provides that the basis of property shall be the cost of such property. 26 U.S.C. §§ 1011, 1012. The issue here is whether the participations and residuals were part of the cost of the films.

Cost is defined as the amount paid for the property in cash or other property. Treas. Reg. § 1.1012–1 (1992). For an accrual taxpayer, the amount paid generally includes liabilities that encumber the property when the property is acquired, or that are assumed by the taxpayer in acquiring the property. *Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947); *Waddell v. Commissioner*, 86 T.C. 848, 898, 1986 WL 22124 (1986), *aff'd per curiam*, 841 F.2d 264 (9th Cir.1988); *see also Denver & Rio Grande*

*Western R.R. v. United States*, 205 Ct.Cl. 597, 505 F.2d 1266, 1269 (1974). Understandably, however, liabilities that are contingent and may never occur are ordinarily excluded from the cost basis so as not to allow the depreciation of phantom costs. *See Waddell*, 841 F.2d at 266. The Government points to several cases where contingent costs were disallowed as a part of the cost basis to be depreciated.

In *Lemery v. Commissioner*, 52 T.C. 367, 1969 WL 1536 (1969), *aff'd per curiam*, 451 F.2d 173 (9th Cir.1971), the taxpayer purchased three corporations, and as part of the purchase, agreed to pay $200,000 to the seller in return for the latter's five-year covenant not to compete. However, the $200,000 was payable only from the profits, if any, which might be earned by the corporations in future years. The taxpayer claimed a basis of $200,000 in the covenant, and sought to amortize that purported investment at a rate of $40,000 per year over a five-year life. The disallowance was upheld because the payment was to be paid only if the companies showed a net profit. 52 T.C. at 378, 1969 WL 1536. This case presented a clear circumstance in which the taxpayer sought to deduct costs that might never be incurred.

In *Denver & Rio Grande Western Railroad*, the IRS disallowed inclusion of the cost of building a spur line in the cost basis for depreciation. 505 F.2d at 1267, 1271. The cost was paid by a customer and the taxpayer had agreed to repay the customer in semiannual installments for a period not to exceed 10 years, at the rate of 32 percent of the revenues earned by the taxpayer from using the spur line after 100,000 tons of potash had been transported on the line each year. The Court of Claims upheld the disallowance of the depreciation on the spur line because the obligation to repay the advance was not fixed and definite: "Absent a binding obligation on the Railroad's part to repay all of [the customer's] advances at the time the investment credit and depreciation deductions were taken we deem it impossible to value the obligation assumed." 505 F.2d at 1270. This is another situation where it is apparent that the cost might never be incurred.

The cases cited by the Government all involve situations in which the inclusion of contingent liabilities in the cost basis would permit depreciation deduction on costs that might never be incurred. *See, e.g., Columbus and Greenville Ry. v. Commissioner*, 42 T.C. 834, 849, 1964 WL 1354 (1964) (where petitioner acquired property subject to a mortgage, the amount of which was subject to negotiation, the mortgage was not allowed to be added to basis), *aff'd per curiam*, 358 F.2d 294 (5th Cir.), *cert. denied*, 385 U.S. 827, 87 S.Ct. 61, 17 L.Ed.2d 64 (1966); *Albany Car Wheel Co. v. Commissioner*, 40 T.C. 831, 1963 WL 1577 (1963) (where petitioner assumed obligation under a union contract to give severance pay to employees if petitioner closed his plant, but could satisfy obligation by giving advance notice of closing, the liability was too speculative to be included in basis), *aff'd per curiam*, 333 F.2d 653 (2d Cir.1964); *Rodman v. Commissioner*, 542 F.2d 845, 850 (2d Cir.1976) (where petitioner failed to prove the existence of a bona fide debt, debt could not be included in basis).

The Government notes that the disallowance of contingent liabilities forming a part of the cost basis for depreciation under 26 U.S.C. § 1012 bears a similarity to the disallowance of contingent liabilities as ordinary expenses under 26 U.S.C. § 461. The requirement in the latter is that ordinary expenses are generally not deductible by an accrual taxpayer until all events that determine the fact of liability have occurred and the amount thereof can be determined with reasonable accuracy. This "all-events" test originated in *United States v. Anderson*, 269 U.S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347 (1926) and has since been expressed in Treas. Reg. § 1.461–1(a)(2). The district court concluded that this analogy is appropriate in determining what liabilities can be included in the cost basis for depreciation. The district court noted that although the amount of liability could be accurately determined in this case, the "fact of liability" could not.

The analogy breaks down, however, when it is applied to the depreciation formula mandated by the IRS in Rev.Rul. 60–358. All of the cases interpreting the "all-events" test are also concerned with allowing a deduction

of an expense that may never be incurred. See, e.g., *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 106 S.Ct. 2092, 90 L.Ed.2d 569 (1986), *United States v. General Dynamics Corp.*, 481 U.S. 239, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987); *World Airways, Inc. v. Commissioner*, 62 T.C. 786, 1974 WL 2774 (1974), *aff'd* 564 F.2d 886 (9th Cir.1977).

The Government has cited no case that has applied the "all-events" test governing the determination of deductibility of ordinary expenses under section 461 to the determination of what liabilities may be included in the cost basis for depreciation under section 1012.[3] The important point, which was overlooked by the district court, is that the deduction of an expense that may never be incurred cannot occur under the Income Forecast formula. It is the Rev.Rul. 60–358 formula, mandated by the IRS, that provides this certainty. Thus, the purpose of the all-events type of requirement is fulfilled.

For motion picture and television films, the IRS ruled that the producers could no longer delay reporting income until after the costs of production are recovered, but must spread those costs over the flow of the income to be derived. Rev.Rul. 60–358. The IRS provided a formula for doing so based on projected income, net of distribution costs. So long as the revenue projection is a given in the formula, the participation and residual costs are mathematically provided. The amount of the participation and residual costs is not a distribution expense and, thus, remains a part of the total estimated net income reflected in the denominator of the equation ($1,200,000 in our example). The inclusion of those costs in the projected lifetime net income and the total cost to be depreciated assures a depreciation deduction that is proportionate to the flow of net income.

Under the IRS formula, it is mathematically impossible for total depreciation to exceed the total costs of producing the film, including the participations and residuals. We have provided the mathematical calculation proving this in the Appendix (Proposition 1).

The Income Forecast method for depreciation set forth by Transamerica has the following feature noted as Proposition 1: "The cumulative depreciation to date is always less than the cumulative costs to date." Simply stated, the reason is that the revenue necessary to produce the participations and residuals included in the cost basis is included in the denominator of the fraction (the projected lifetime net income). As the participations and residuals included in the cost increases, the fraction determining the rate of depreciation decreases, with the result that the cumulative depreciation cannot exceed the total costs.

An additional argument of the Government is that participation and residual costs could be overstated, resulting in disproportionately high depreciation for total cost of the film in early years. The only way there could be an overstated amount of participations and residuals is if the projected lifetime net income is overstated. This is precluded by the operation of the formula. Under the formula, if the net lifetime income projections are overstated, resulting in larger participations and residuals, the depreciation of the total cost of the film decreases. We have provided the mathematical calculations proving this point in the Appendix (Proposition 2). The income forecast method for depreciation set forth by Transamerica has the following feature, as noted in Proposition 2: "If the projected total lifetime net revenue is increased, then at any time the cumulative depreciation is decreased."

Thus, the inclusion of participations and residuals in the cost basis cannot result in front-loading of depreciation in earlier years. The inclusion of overstated participations and residuals in the cost basis actually results in reduced total depreciation.

A comparison utilizing our prior example will illustrate this mathematical result. Assume $1,200,000 in projected net income, $600,000 in pre-released costs, yielding a profit of $600,000, and assume 33⅓% of profits go to participations and residuals, being

---

**3.** Whether the standard should be somewhat different for section 461 and section 1012 is really not an issue in this case. The basic rationale behind the exclusion of contingent liabilities for section 461 ordinary expenses and the section 1012 basis for depreciation is essentially the same: the taxpayer should not be allowed to deduct expenses or costs that it will never incur.

$200,000, for a total depreciable cost of $800,000. The resulting depreciation for a given year where there was $300,000 in revenue would be calculated as follows:

$$\frac{\$300,000}{\$1,200,000} \times \$800,000 = \$200,000$$

---

If the projected net income is increased to $1,800,000, yielding a profit of $1,200,000 with the same 33⅓% of profit for participations and residuals, or $400,000, for a total depreciable cost of $1,000,000, the calculation for the year would be as follows:

$$\frac{\$300,000}{\$1,800,000} \times \$1,000,000 = \$166,000$$

---

Regardless of the number of years over which the net income is projected or the percentage of net profits upon which the participations and residuals are based, the total depreciation deduction will decrease as the projected net income increases, as is demonstrated in the mathematical calculations provided in the Appendix.

Thus, including the participations and residuals in the cost factor in the formula cannot result in total depreciation that exceeds actual costs, nor can it result in front-loading of depreciation of the total costs in the early years. The operation of the formula fulfills the policy of certainty required under section 1012 as well as the "all-events" test applicable to section 461.[4]

### V.

 Transamerica followed the generally accepted accounting principles recognized by the American Institute of Certified Public Accountants in including participations and residuals in the costs of production to be depreciated annually. We recognize, however, that following generally accepted accounting principles for financial accounting purposes does not necessarily assure that the accounting method will be recognized for tax purposes. *See Hughes Properties, Inc.,* 476 U.S. at 603, 106 S.Ct. at 2097. Nor does the mere desirability of matching expenses with income necessarily sustain a taxpayer's deduction. If the taxpayer's method of accounting does not clearly reflect income, the IRS can impose a method that does. *Id.* In this case, however, the IRS has provided the method by which the costs of production of a film must be depreciated, and has provided the method by which depreciation is to be calculated. We conclude, as the Supreme Court did in *Hughes,* that, in this instance, the inclusion of participations and residuals in the cost basis is justified. It follows the rationale of the IRS's own formula.

An IRS Treasury regulation reflects the general application of these principles.

> A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions or practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year.

Treas.Reg. § 1.446–1(a)(2) (1992).

### VI.

We conclude that in order for Rev.Rul. 60–358 to operate as intended, so as to spread

---

4. We note that if total net income projections are understated there will be a greater depreciation of pre-release costs because the life of the film is in effect shortened. However, this is anticipated in the formula and is not due to any inclusion of the costs of participations and residuals. In fact, the amount of the participations and residuals included in the cost of the film to be depreciated will be understated because the total net income projected is underestimated. The Rev.Rul. 60–358 provision for periodic adjustments of the total net income projections assures the continued accuracy of the apportionment of depreciation of the total costs to the flow of net income.

the cost of the participations and residuals over the stream of net income the films produce, the cost of participations and residuals must be included in the cost of the films reflected in the Rev.Rul. 60–358 equation. The inclusion of these costs in the total cost of the films to be depreciated cannot result in a total depreciation deduction in excess of actual costs. Furthermore, it cannot result in a disproportionate depreciation deduction in early years. The inclusion of these costs in the total costs to be depreciated clearly reflects the taxable income of the taxpayer. Therefore, we reverse and remand to the district court to allow the refund as thus calculated together with the appropriate allowance for interest.[5]

### REVERSED and REMANDED.

## APPENDIX

## The INCOME FORECAST METHOD FOR DEPRECIATION Set Forth by Transamerica

Suppose

$x$ = the net profit participation and residuals percentage,

$R$ = the projected total lifetime net revenues,

$r$ = the cumulative net revenues through the current year,

$D$ = the cumulative depreciation taken through the prior year,

$C$ = the pre-release costs of the film.

Then by definition:

*Depreciation for the current year*

$$= \frac{r}{R}[\ C\ +\ x(R - C)\ ] - D \quad [1]$$

$$= \frac{r}{R}\ C\ +\ \frac{r}{R}\ (R - C)x - D \quad [1']$$

$$= \frac{r}{R}(\ 1\ -\ x)C + rx - D \quad [1'']$$

*Cumulative depreciation to date*

$$= \frac{r}{R}[\ C\ +\ x(R - C)\ ] \quad [2]$$

$$= \frac{r}{R}\ C\ +\ \frac{r}{R}\ (R - C)x \quad [2']$$

$$= \frac{r}{R}(\ 1\ -\ x)C + rx \quad [2'']$$

*Comments*

---

5. The dissent does not contest the fact that applying the IRS formula as set forth in this opinion cannot result in the taxpayer deducting costs that are never incurred. Rather, it argues that the timing of the deduction is the problem. The dissent misses the point in its discussion of the "timing of the deduction" and the "time value of money," apparently claiming it results in excess depreciation in early years. *See* Dissent at 1373. As we have shown by analysis, by example, and by mathematical formula, the inclusion of the participations and residuals in the cost basis not only cannot result in the deduction of expenses that are never incurred, it also cannot result in disproportionate depreciation in early years. *See* discussion at pages 1369–71.

The dissent speculates, without any factual support in the record, as to what taxes may or may not have been paid by a subsequent purchaser. How the IRS may have applied its own formula to another taxpayer has no bearing on this case. Our task in this appeal is to determine the correct application of the formula both for this taxpayer and for future precedent. As Transamerica pointed out in its opening brief, the record reveals that Transamerica's application of the income forecast method of depreciation has been utilized by a majority of other film companies and was specifically approved by the Commissioner for Warner Brothers. [Brief at 14, n. 9.] Furthermore, as we have noted, this method is approved by the American Institute of Public Accountants as an appropriate method for calculation of depreciation because it spreads the production costs evenly over the flow of the income. *See* page 1365, n. 1.

Our function in this case is to interpret the law as it applies to this taxpayer and to all other film makers. We cannot, as the dissent invites us to do, base our decision on a speculation of what tax treatment may have been allowed for a subsequent purchaser from Transamerica.

### APPENDIX—Continued

1. In [2] the bracketed term represents a measure of the costs incurred. There are two components to this: the first is the pre-release costs of the film as measured by C, and the second is the participations/residuals cost as measured by $x(R - C)$. In turn, the resulting depreciation has two components: the first is the depreciation allowed for the pre-release costs of the film, namely $(r/R)C$, and the second is the depreciation allowed for the participations/residuals costs, $(r/R)(R - C)x$, as displayed in [2'].

2. In the application of the formulas [1] and [2] each of the input-data numbers x, r, and C is known; only the number R is an estimate.

In this same setting, we have in regard to cumulative costs the following representation:

$$\text{Cumulative costs to date} = C \qquad \text{if } r \le C \qquad [3]$$

$$= C + x(r - C) \text{ if } r > C \qquad [3']$$

The income forecast method for depreciation set forth by Transamerica has the following two features:

### PROPOSITION 1

**The cumulative depreciation to date is always less than the cumulative costs to date.**

*Proof.* By [2″] the cumulative depreciation to date can be expressed as

$$\frac{r}{R} (1 - x)C + rx,$$

which is less than

$$(1 - x)C + rx$$

since $r/R < 1$. If $r \le C$, then by [3]

$(1 - x)C + rx \le (1 - x)C + Cx = C =$ cumulative costs to date, while if $C < r$, then by [3']

$(1 - x)C + rx = C + x(r - C) =$ cumulative costs to date.

### PROPOSITION 2

**If the projected total lifetime net revenue is increased, then at any time the cumulative depreciation is decreased.**

*Proof.* By [2″] the cumulative depreciation to date can be expressed as

$$(1) \qquad \frac{r}{R} (1 - x)C + rx.$$

Noting that x is always less than 1 and hence that $1 - x$ is positive, it is immediate that the expression in (1) is decreased whenever the number R is increased.

CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting:

This appeal involves the proper interpretation of the IRS's formula for calculating the

depreciation of the cost of production of a motion picture film. The majority holds that a taxpayer can include participations and residuals that have yet to be incurred in the cost basis of a film when calculating the amount of depreciation that can be deducted in a given year. Because I disagree with this conclusion, I respectfully dissent.

It is well established that liabilities which can only be calculated on the basis of future events are contingent and cannot be included in a cost basis. *See, e.g., Columbus & Greenville Ry. v. Commissioner*, 42 T.C. 834, 846, 1964 WL 1354 (1964), *aff'd*, 358 F.2d 294 (5th Cir.), *cert. denied*, 385 U.S. 827, 87 S.Ct. 61, 17 L.Ed.2d 64 (1966); *Lemery v. Commissioner*, 52 T.C. 367, 377–78, 1969 WL 1536 (1969), *aff'd*, 451 F.2d 173 (9th Cir.1971). I see no reason why this principle should not control in the instant case. Under the terms of the relevant agreements, Transamerica was only required to pay participations and residuals if the films in question made a profit. In this sense, the participations and residuals are contingent liabilities and therefore cannot be included in the cost basis component of the formula used to calculate the depreciation of a motion picture film.

In reaching the opposite conclusion, the majority attempts to distinguish the line of cases cited above. According to the majority, the rule that basis cannot include capitalized expenses that are contingent on future events is designed to ensure that taxpayers are unable to deduct costs which are never incurred. The majority contends that this concern is not relevant in the instant case and offers mathematical formulas to prove that UA would not be able to deduct costs it did not incur if it were allowed to include participations and residuals in the cost basis figure. As a result, the majority contends that the line of cases cited above does not apply.

I express no opinion concerning the accuracy of the majority's mathematical formulas (Appendix A), although I question whether anyone other than a mathematician could be completely comfortable with them. Instead, I disagree with the majority's assumption that the rule established in *Lemery* and other related cases was designed solely to pre-

vent taxpayers from deducting costs they may never incur. The taxpayers, the IRS, and these courts were equally concerned with the timing of the deduction, i.e., the time value of money.

This concern has just as much force in the instant case. I am not aware of any other situation where a taxpayer is allowed to take a deduction before he actually incurs it absent express statutory authorization. I do not think it is appropriate to create an exception to this rule at this time.

Thus, I would affirm the district court's decision by holding that Transamerica was not entitled to include participations and residuals in the cost basis figure for the purpose of calculating the depreciation deductions of its motion picture films. I am convinced that this would not impose an undue hardship on Transamerica. The Government concedes that Transamerica can take deductions for the payment of participations and residuals when it actually incurs these costs.

Instead, it is the majority's approach that is inequitable. It gives rise to a double-deduction problem. Transamerica paid taxes using the Government's method of depreciation and here seeks a refund using a method which allows it to deduct the payment of participations and residuals that are still contingent. Transamerica, however, sold UA before it was required to pay the participations and residuals at issue. Because UA's purchaser was required to follow the Government's method of depreciation as well, it undoubtedly claimed the lion's share of the deductions now in dispute. The statute of limitations has almost certainly run against UA's purchaser. Therefore, by holding that Transamerica is entitled to a refund, the majority makes it possible for two parties to deduct the same costs and effectively causes the IRS to lose millions of tax dollars because the Government is unable to pursue UA's purchaser.