**PRINCIPAL MUTUAL LIFE INSURANCE COMPANY AND SUBSIDIARIES, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 94–174 T.

United States Court of Federal Claims.

Oct. 17, 2000.

Bruce Graves with John G. Schmidt, both of Des Moines, Iowa, for plaintiff.

Robert Stoddart, with whom were Thomas D. Sykes, Mildred L. Seidman, Chief, Court of Federal Claims Section, and Loretta C. Argrett, Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C. for defendant.

### *OPINION*

SMITH, Senior Judge.

This case comes before the court on plaintiff's motion for partial summary judgment and on defendant's cross-motion for partial summary judgment, both filed with respect

to paragraphs 19, 33, and 49a of the complaint. Plaintiff alleges that it has been wrongfully denied a refund of certain federal income taxes paid on its 1984, 1985, and 1986 income tax returns. The motions have been fully briefed and oral arguments have been heard.

At issue is whether plaintiff must include reserves for excess interest guaranteed beyond the end of the taxable year as part of statutory reserves. This issue determines the amount of the excess of statutory over tax reserves under I.R.C. § 809(b)(4) for purposes of calculating the average equity base of a mutual life insurance company under I.R.C. § 809(b).[1] For the reasons given below, the court finds that the inclusion is required.

## BACKGROUND

The relevant facts are undisputed. Plaintiff, Principal Mutual Life Insurance Company, is an Iowa-based mutual insurance corporation. Principal is engaged, and at all times relevant to this action has been engaged, in the business of writing various forms of individual and group life and health insurance policies and annuities.

There are two principal types of life insurance companies: stock companies and mutual companies. Stock companies receive equity capital from their shareholders and pay a portion of their profits to their shareholders as dividends. These dividend payments are not tax deductible. Mutual companies differ from stock companies in that, rather than being owned by outside shareholders, they are owned by their policyholders and receive equity capital from their policyholders' premiums. The tax treatment of amounts paid by mutual companies to their policyholders, who are also their owners, is thus more complicated than the payment of dividends to shareholders.

When a mutual company makes a payment to a policyholder under his insurance policy or pension plan, the payment is part price rebate, part policyholder benefit, and part return on equity capital (i.e., a share of company profits).[2] In order to ensure balanced tax treatment of mutual and stock companies, the portion that is return on equity capital theoretically should be nondeductible by a mutual insurer (just as return on equity capital is nondeductible when paid out as dividends by stock companies). It is difficult, however, to precisely determine what proportion of a mutual company's payments to policyholders falls into that category.

Before 1982 Congress simply allowed both stock and mutual companies to deduct in full all payments to policyholders, despite the fact that a portion of mutual companies' payments to policyholders were actually return on equity. In 1982 and 1983 Congress prescribed a different approach, which is not pertinent to the issue at hand. Then, in 1984, Congress, as part of a large-scale overhaul of the life insurance company income tax provisions, passed a new section 809. This new section establishes a method of estimating the percentage of mutual company payments to policyholders, "policyholder dividends," that are actually returns on equity capital and therefore not properly tax deductible. "Policyholder dividend," for purposes of the part of the Code dealing with life insurance companies, is defined as "any dividend or similar distribution to policyholders in their capacity as such". Section 808(a). Policyholder dividends are deductible for the year paid or accrued, section 808(c)(1, 2), except as reduced for mutual insurance companies under section 809. Section 809 was intended to determine which part of the dividend was deductible and which part was not. The application of the new section 809 is at issue in this case.

An insurance company keeps substantial funds in reserve with which to make payments under its policies. Iowa state law imposes reserve requirements on life insurance companies as it did in this case with respect to Principal Mutual. *See* Iowa Code section 508.36 ("Standard Valuation Law").

---

1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code (I.R.C. or the Code), Title 26 U.S.C.

2. *See* Staff of Joint Comm. on Taxation, 98th Congress, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 612 (Comm. Print 1985).

For accounting purposes, such reserves are recorded as liabilities on the insurance company's balance sheet, and represent contractual claims by policyholders against the company's assets. A particular subset of reserves maintained by insurance companies are known as "excess interest reserves."

Excess interest is interest guaranteed on an annuity or investment account which exceeds the prevailing State assumed interest rate. Iowa calculates this rate according to its standard valuation law which is a state enactment of the National Association of Insurance Commissioners (NAIC) Model Standard Valuation Law. The prevailing state assumed interest rate is used to determine the company's reserves as prescribed by the tax code under the rules contained in section 807(d).[3] "Excess interest" is defined in section 808(d) as "any amount in the nature of interest—

(A) paid or credited to a policyholder in his capacity as such, and

(B) in excess of interest determined at the prevailing State assumed rate for such contract."

Policyholder dividends may include excess interest 808(b).

The tax treatment of reserves maintained by life insurance companies for interest due on its contracts up to the prevailing state assumed rate is not in dispute. During the period in question, however, Principal had several classes of accounts whose interest rates exceeded the prevailing state assumed rate. This reflected the high interest rates of the time and the insurance industry's need to compete with other bidders for the policyholder's money. The guaranty periods, the length of time for which a particular interest rate was guaranteed on these accounts, ranged from two to eight years. The interest reserves for any given account consist of the present value of the interest guaranteed on that account for the remainder of its guaranty period. At issue is how to classify reserves for excess interest guaranteed beyond the end of the taxable year for purposes of calculating statutory and tax reserves under section 809(b)(4).

On its income tax returns in 1984, 1985, and 1986, when making the calculation required by section 809(b)(4), Principal did not include its reserves for excess interest guaranteed beyond the end of the taxable year in its statutory reserves or in its tax reserves. The Internal Revenue Service contends that Principal should have included reserves for excess interest guaranteed beyond the end of the taxable year in its statutory reserves, which would have increased Principal's tax liability by reducing its deduction for policyholder dividends. It would have done this because the difference between statutory reserves and tax reserves is added to the equity base. This in turn yields a larger amount to be subtracted from the policyholder dividend reserves, and hence a smaller tax deduction from income, and hence, higher taxes.

## ANALYSIS

■■■ This court takes the determinations of the Commissioner of Internal Revenue to be *prima facie* correct and looks to plaintiff to carry the burden of proving any error. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Furthermore, income tax deductions are "a matter of legislative grace" and plaintiff bears the burden of clearly demonstrating that it is entitled to the deduction it claims. *INDOPCO v. Commissioner,* 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (citing *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934); *United States v. General Dynamics,* 481 U.S. 239, 245, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987)). Absent clear evidence that the Commissioner's determination was inconsistent with the intent of the legislature, the court must accept that determination as correct. *See United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967).

■■■ Principal, as a mutual insurance company, is required by section 809 to reduce its annual deduction for policyholder dividends by an amount referred to as the "differential earnings amount." The differential earnings

**3.** *See* Staff of Joint Comm. on Taxation, 98th Congress, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 611 (Comm. Print 1985).

amount is intended to be an approximation of the portion of policyholder dividends which are actually returns on equity capital. The differential earnings amount is the product of the "differential earnings rate" and the company's "average equity base" as determined under section 809(b).

The "differential earnings rate" is determined on an annual basis in accordance with section 809(c) and represents the extent to which the pre-tax return on equity of stock life insurance companies, after paying policyholder dividends, exceeds that of mutual life insurance companies on an industry-wide basis. "The Congress believed that this difference is attributable to distribution by mutual companies of earnings to their owners."[4] The differential earnings rate was 7.8% for 1984 (IRC section 809(c)(21)(B)), 6.157% for 1985 (Rev. Rul. 87–20, 1987–1 C.B 168), and 10.539% for 1986 (Rev. Rul. 87–92, 1987–2 C.B 165).

Section 809(b)(2) defines the equity base as the surplus and capital of the company, "adjusted as provided in paragraphs (3), (4), (5), and (6) of this subsection." The "average equity base" is the average of the equity base for the taxable year at issue and the preceding taxable year. Section 809(b)(1). The adjustment required by paragraph (4) is at issue in this case. Section 809(b)(4) requires that the equity base be increased by the amount that a company's aggregate statutory reserves exceed its aggregate tax reserves. Thus, a mutual company's deduction for policyholder dividends is reduced by, among other things, an amount equal to the differential earnings rate multiplied by the excess of the statutory reserves over the tax reserves. The parties disagree as to how to interpret the definitions of statutory and tax reserves.

Both statutory and tax reserves are defined in section 809(b)(4)(B). Statutory reserves, also referred to as "statement reserves," are "the aggregate amount set forth in the annual statement with respect to items described in section 807(c)." Section 809(b)(4)(B)(i). These reserves are "statutory" in that state law, as explained above, imposes reserve requirements on life insur-

ance companies. Tax reserves are "the aggregate of the items described in section 807(c) *for the purposes of section 807.*" Section 809(b)(4)(B)(ii) (emphasis added). Tax reserves are a subset of statutory reserves. Tax reserves are those statutory reserves which are treated, for tax purposes, as current liabilities. Reserves for guaranteed interest contracts, such as those maintained by Principal Mutual, are included in "items taken into account" in computing reserves "for the purposes of section 807." Sections 807(c)(3), 809(b)(4)(B)(ii). The subtle differences between these definitions must be understood before one can arrive at the excess of statutory over tax reserves. This, in turn, is essential to the calculation of the equity base and, ultimately, the calculation of plaintiff's differential earnings amount which serves to reduce plaintiff's policyholder dividend deduction.

In this case, the parties' dispute is one of statutory construction. The dispute focuses primarily on sections 807(c), 809(a), (b), and (g), and 811(d). Key areas of contention include the significance of the phrase "for purposes of this part," as used in section 811(d), and the significance of the term "computing" or "computed," as used in that same section. Plaintiff contends that, because section 811(d) applies "for purposes of this part," including sections 807 and 809, it must require that reserves for excess interest guaranteed beyond the taxable year be excluded from both statutory and tax reserves. Plaintiff argues that both statutory and tax reserves are "computed" for purposes of section 811(d).

As to "the purposes of section 807," as used in defining "tax reserves," that section is entitled, "Method of Computing Reserves for Purposes of Determining Income." It deals with changes in the level of insurance companies' reserves. When reserves are decreased, income is recognized. Where reserves are increased, income is reduced. Thus, "the purposes of section 807" involve the determination of income for the sake of determining tax liability. *See* section

---

4. Staff of Joint Comm. on Taxation, 98th Congress, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 612 (Comm. Print 1985).

803(a)(2) (income), section 805(a)(2) (deductions).

Statutory reserve requirements, on the other hand, serve very different, non-tax, public policy purposes, including assuring that life insurance companies maintain adequate reserves to meet their contractual commitments to policyholders. *See* Iowa Code section 508.36 ("Standard Valuation Law"); *see generally* 19B Appleman, Insurance Law and Practice, Ch. 369A, Reserves sections 11018–039 (1982); Dwight Bartlett, *History of the development of preliminary term methods of valuation of life insurance policies in the United States,* 15 Journal of Insurance Regulation 382 (1997).

The code refers to the "excess" of statutory reserves over tax reserves. Section 809(b)(4). The very nature of these two types of reserves dictates that tax reserves will tend to be smaller than statutory reserves. The larger the statutory reserves, the greater the probability that contractual obligations will be met. The smaller the reserves acknowledged by the IRS for tax purposes, the smaller the mutual insurance company's deductions from income and, thus, the greater the tax revenue. Plaintiff's own tax returns bear this out. For example, plaintiff's reconciliation of annual statement reserves to tax reserves for 1985 begins with statement reserves on December 31, 1985 of $11,764,694,832.15. Tax adjustments then reduce those statement reserves to tax reserves of $11,393,606,908.51. Thus, plaintiff's tax reserves at that time were smaller than statement reserves by the sum of $371,087,-923.64. Other years show the same pattern.

One of the tax adjustments made to reconcile annual statement reserves to tax reserves is the section 811(d) adjustment. Section 811(d) has the effect of disallowing the inclusion of certain reserves for excess interest on guaranteed interest contracts, reserves that would otherwise be included "for purposes of section 807." Thus, a company may not increase its deductions by increasing those reserves. Section 811(d) reads as follows:

Method of Computing Reserves on Contract Where Interest Is Guaranteed Beyond End of Taxable Year—

For purposes of this part (other than section 816 [defining life insurance companies and life insurance reserves]) amounts in the nature of interest to be paid or credited under any contract for any period which is computed at a rate which—

1) exceeds the prevailing State assumed interest rates for the contract for such period, and

2) is guaranteed beyond the end of the taxable year on which the reserves are being computed,

shall be taken into account in computing the reserves with respect to such contract as if such interest were guaranteed only up to the end of the taxable year.

The parties agree that "Part" refers to Part I of Subchapter L, which includes all life insurance specific sections of the code. The parties disagree, however, as to whether "computing the reserves" "for purposes of this part" refers to both statutory and tax reserves or to tax reserves only. Plaintiff argues that reserves for excess interest guaranteed beyond the end of the taxable year are not a part of either statutory or tax reserves. Plaintiff reasons that, because section 811(d) applies "for purposes of this part," it must exclude reserves for excess interest guaranteed beyond the end of the taxable year from both statutory and tax reserves since both are defined in section 809 and because section 809 and section 811(d) are both found in part I of subchapter L. Defendant argues that a consistent interpretation of related code sections, supported by explanations in the legislative history, dictates that excess interest reserves guaranteed beyond the end of the taxable year are excluded from tax reserves only and are included in statutory reserves. For the reasons given below, the court must agree with the Commissioner.

The purpose of section 811(d) is to prevent life insurance companies from obtaining an accelerated deduction for excess interest guaranteed for periods beyond the current taxable year in determining life insurance

company taxable income.[5]  In its Supplemental Report on the Tax Reform Act of 1984, the House Ways and Means Committee explained permanent and temporary provisions of the 1982 Act (TEFRA) that addressed "certain tax avoidance techniques available to life insurance companies." H.R.Rep. No. 432, 98th Cong., 2d Sess. 1394, 1984 U.S.C.C.A.N. at 1039.  Among these provisions to address tax avoidance techniques was the temporary TEFRA rule on reserves for excess interest guaranteed beyond the current taxable year.  *Id.* at 1395.  That provision reflects the committee's concern "that deductions which do not reflect economic expenses generally are inappropriate...." *Id.* at 1398.  The only reserves which survive the restriction of section 811(d) are those held with respect to interest guaranteed up to the end of the taxable year at issue, and 50% of reserves held as part of a "provision for policyholder dividends (or similar liability) payable in the following year." Section 809(b)(6).  Because of section 811(d), reserves held with respect to interest guaranteed beyond the end of the taxable year may not be included in the items listed at section 807(c) for the purposes of section 807, that is, "tax reserves." Accordingly, insurance companies may not claim a tax deduction by increasing those reserves.

Section 811(d) reflects Congress' general concern that deductions be allowed only in the period during which all events have occurred that are necessary to establish the fact of the liability.  *See* I.R.C. § 461; 26 C.F.R. § 1.461–1(a)(2) (1999) (the "all events test"); *see also United States v. General Dynamics,* 481 U.S. 239, 246, 247, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987) (discussing the "all events test" with respect to insurance reserves).  Those events include economic performance and the ability to determine the amount of the liability with reasonable accuracy.  Short-term reserves correspond to a well established and certain liability.  Thus, short-term interest reserves qualify as tax reserves.  Long-term interest reserves correspond to a liability that is fixed with a lesser degree of certainty, and are thus statutory reserves, but not tax reserves.

### Statutory Construction

Section 809 lays out a step-by-step calculation culminating with a reduction in the insurance company's deduction for policyholder dividends.[6]  One begins with the company's surplus and capital as shown in the annual statement.[7]  The annual statement sets out information according to state regulations and requirements, not federal income tax requirements.  One then adds in various other items in order to get a full picture of what section 809(b)(2) refers to as the company's "equity base."  The equity base is then multiplied by the differential earnings rate (an annually published percentage) to get the differential earnings amount.  The differential earnings amount is the estimated value of payments to policyholders that are actually dividends on equity capital and, thus, not deductible.

Section 807 is invoked by section 809 but has a primary purpose aside from section 809.  That primary purpose is to describe the effect of a decrease or increase in reserves on Life Insurance Company Taxable Income.  A decrease in reserves results in taxable income while an increase in reserves results

---

5.  *See* Staff of the Joint Committee on Taxation, *General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA),* H.R. 4961, 97th Cong., 2d Sess. 348–349.  This temporary TEFRA rule, now section 811(d), was later enacted as part of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 494 (1984); *see* S. Print No. 98–169, 98th Cong., 2d Sess., Vol. I at 555, 556 (1984).

6.  *See* Joint Comm. on Taxation, 98th Congress, 2d Sess., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 612–19 (Jt. Comm. Print 1984) (discussing each step in the section 809 calculation).

7.  *See* section 809(b)(4)(B)(i), (g)(3)2 (determinations based on NAIC approved annual statement); Staff of Joint Comm. on Taxation, 98th Congress, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 617 (Comm. Print 1985) (equity amounts are as shown on annual statement); H.R. Rep. 432, Part II, 98th Cong., 2d Sess. at 1414, *as reprinted in* 1984 U.S.C.C.A.N. 697, 1058, 1059 (reserves computed under state law per section 816(a), rules based on NAIC guidelines adopted by most states).

in a tax deduction. That decrease or increase is entered on Form 1120L, Schedule A, line 2 (decrease) or line 9 (increase). Principal could increase its long-term excess interest reserves to generate a tax deduction except that the Code, at section 811(d), prohibits that treatment of long-term reserves. Section 811(d) allows reserves for excess interest to be included only to the end of the taxable year. Longer-term excess interest reserves are not to be considered reserves for purposes of determining taxable income of the insurance company. As explained above, the effect of section 811(d) is to make tax reserves smaller, that is, to effect a smaller "aggregate of the items described in the list at section 807(c) as determined for the purposes of section 807." Section 809(b)(4)(B)(ii). Here, however, we are more concerned with the secondary purpose of section 807, which is to give meaning to the terminology of section 809(b)(4), a provision that impacts the computation of a different deduction, the policyholder dividend deduction.

Statutory reserves include categories, or amounts that tax reserves are not meant to include, amounts that are properly characterized as equity for tax purposes. These categories, which are not included in tax reserves, are enumerated specifically in section 809(b)(2) for inclusion in the company's equity base on Form 1120L, Schedule F. Section 809(b)(2) defines equity base as surplus and capital increased by (3) nonadmitted financial assets, (4) the excess of statutory over tax reserves, (5) certain other reserves, and by (6) 50% of next year's policyholder dividends. At issue here is the impact of paragraph (4).

Both statutory and tax reserves are "aggregates" according to section 809(b)(4)(B)(i and ii). Arguably, an aggregate is a sum achieved through "computation" and, thus, one might conclude, both statutory and tax reserves are "computed." The statutory reserves, however, as defined in section 809(b)(4)(B)(i), consist of numbers lifted directly from the plaintiff's annual statement, not "determined" or "computed" in the same way as is required for tax reserves. Tax reserves are "determined for purposes of section 807" by subtracting reserves for excess interest guaranteed beyond the end of the taxable year according to the requirements of section 811(d). Section 809(b)(4)(B)(ii). Section 811(d) refers to this adjustment as "computing the reserves" "for purposes of this part [subchapter L, part I, Life Insurance Companies]." In contrast, statutory reserves are as "set forth in the annual statement with respect to items described in section 807(c)," not as "determined for purposes of section 807." Tax reserves are the only reserves which are really being computed in, and for the purposes of, the life insurance part (Subchapter L Part I) of the Code. Any "computation" of statutory reserves was done for purposes established under state law and by the NAIC, not for federal income tax purposes.

Furthermore, the phrasing of the definition of statutory reserves at section 809(b)(4)(B)(i) suggests that Congress would have so stated if it meant for section 811(d) to apply there. The definition includes an adjustment to avoid double counting pursuant to section 811(c) but does not include any adjustment to exclude reserves for excess interest guaranteed beyond the end of the taxable year pursuant to section 811(d). The definition of statutory reserves mentions this section 811(c) adjustment specifically but does not mention section 811(d) at all.

Plaintiff suggests that this specific reference to section 811(c) "may be seen as nothing more than legislative underscoring" of Congress' reversal of *Commissioner v. Standard Life and Accident Ins. Co.*, 433 U.S. 148, 97 S.Ct. 2523, 53 L.Ed.2d 653 (1977), through the enactment of section 811(c). The court, however, attaches greater significance to that specific reference when considered in light of Congress' failure to mention section 811(d) in the definition of statutory reserves. Accordingly, the court must conclude that if Congress had intended not to include reserves for excess interest guaranteed beyond the end of the taxable year as part of statutory reserves, it would have said so in the definition, just as it did with respect to reserves attributable to deferred and uncollected premiums which are not permitted under section 811(c).

A further reason for not reading a section 811(d) exclusion into 809(b)(4)(B)(i) is that it defeats the purpose of 811(d) and is thus not a logical inference. Section 811(d) was designed to disallow the excess interest reserves as tax deductions for the reason previously discussed. Excluding them from tax reserves serves this purpose. Excluding them from statutory reserves defeats the purpose.

### Calculation of Principal's Policyholder Dividend Deduction

All state-law liabilities, including statutory reserves, are subtracted from assets to obtain surplus and capital, the beginning of the equity base calculation. "Surplus and capital" does not include statutory reserves. Whereas statutory reserves represent policyholders' contractual claims against the mutual insurer's assets, surplus and capital represent the policyholders' proprietary claims (as owners) against such assets.

The parties agree that the equity base calculation begins with "surplus and capital" as shown on plaintiff's NAIC annual statement. Plaintiff's "surplus and capital" entry, for each of the tax years in dispute, as stated above, was obtained by subtracting state-law liabilities from assets.[8] Those state-law liabilities include statutory reserves, which in turn include excess interest reserves. The Code, section 809(b)(3–6), then requires plaintiff to add back to surplus and capital some of the liabilities that state law permits insurers to subtract on the annual statement.[9] The parties agree that:

> By adding to the "equity base" (consisting of the capital and surplus as shown on Plaintiff's NAIC Annual Statement, as per Section 809(g)(3) and (4)), the excess of statutory reserves over tax reserves, which is what Section 809(b)(4) really does, the Code is saying that, under Section 809, the excess of what appears as a liability on the annual statement over the amount of that

liability which is allowed for tax purposes really represents equity for the further purpose of determining the "differential earnings amount" (the amount by which a mutual company's deduction for policyholder dividends should be reduced).

(Pl.'s Opp'n at 2–3; D.'s Reply at 15).

Statutory reserves, defined in section 809(b)(4)(B)(i) as the items listed at section 807(c), are taken directly from plaintiff's NAIC annual statement. Included in that list, at section 807(c)(3), are a category of reserves deemed, "amounts (discounted at the appropriate rate of interest) necessary to satisfy the obligations under insurance and annuity contracts, but only if such obligations do not involve (at the time with respect to which the computation is made under this paragraph) life, accident, or health contingencies." This category at section 807(c)(3) includes reserves such as those held by plaintiff to guarantee interest on annuity or investment accounts. Those reserves include reserves for excess interest guaranteed beyond the end of the taxable year. Thus, section 809(b)(4)(B)(i), in concert with section 807(c)(3), dictates that reserves for excess interest guaranteed beyond the end of the taxable year be included, at least initially, in statutory reserves. Section 811(d) requires, however, that reserves for excess interest guaranteed beyond the end of the taxable year be excluded when determining tax reserves. Accordingly, pursuant to section 811(d), with respect to tax reserves "determined for purposes of section 807," all that remains under section 807(c)(3) are interest reserves for current year obligations. Plaintiff argues that section 811(d) operates to exclude excess interest guaranteed beyond the end of the taxable year from statutory reserves as well. For the reasons explained below, the court does not agree.

Plaintiff's NAIC annual statements for 1984, 1985, and 1986 included excess interest reserves of $42,486,349, $43,120,549, and

---

8. See Form 1120L, Sch. F, line 1, "Annual Statement Surplus and Capital" and NAIC annual statement p. 3, ln. 30, where the same amounts as those on Form 1120C are shown, for any of the tax years at issue. The court notes a discrepancy between plaintiff's amended return Schedules F and its annual statements. The court assumes that the differences, for "errors in ceded

claim liability," are not significant to its findings and were simply not explained in the briefs.

9. This computation is made on Form 1120L, Schedule F, Differential Earnings Amount, line 8.

$41,073,104 respectively. (*See* Affidavits of William R. Claypool and Robert G. Henderson accompanying plaintiff's motion for partial summary judgment.) These were among the liabilities subtracted from assets to determine surplus and capital. For example, line 11.7 on page 3 of plaintiff's 1985 annual statement is labeled "Reserve for interest guaranty—annuity and fund deposits," and is part of the list of liabilities discussed above. For 1985 that figure was $43,120,549. These include the reserves for excess interest guaranteed beyond the end of the taxable year which are the subject of section 811(d). These excess interest reserves, along with other liabilities, were subtracted from assets to leave surplus and capital of $552,287,240.

Next, on Schedule F, plaintiff was required to add back to surplus and capital certain of these liabilities which are considered equity for tax purposes. Among the items added back is the excess of statutory over tax reserves. Here, in the government's view, plaintiff calculated too small an excess by improperly reducing statutory reserves by the amount of reserves for excess interest guaranteed beyond the end of the taxable year. This reduced plaintiff's tax liability by creating a smaller differential earning amount which, in turn, allowed plaintiff to deduct more of its policyholder dividends. By subtracting the guaranteed interest reserves beyond a year from both statutory and tax reserves they cancel out and do not get added to the equity base. This is inconsistent with the purpose of the statute.

Plaintiff first included the $43,120,549 excess interest reserves in what are listed as "statement reserves" of $11,764,694,832 for 1985. Plaintiff then deducted the same $43,120,549 as a "tax adjustment," based on its interpretation of section 811(d), to arrive at "statutory reserves" of $11,642,720,802. Some "tax adjustments" to statement reserves are appropriate at this stage, such as the exclusion of "Net Due and Deferred Unaccrued Premiums." The court finds that it was not correct, however, for plaintiff to deduct its entire $43,120,549 excess interest reserves from statement reserves as a "tax adjustment" nor to make a comparable adjustment for the other years at issue.

Plaintiff's statutory reserves for 1985 should have been larger. Accordingly, the excess of statutory over tax reserves should also have been larger and should have further increased plaintiff's equity base. Thus, plaintiff's differential earnings amount, computed at Schedule F, should have been greater, plaintiff's deduction for policyholder dividends should, therefore, have been reduced, and plaintiff's taxable income for 1985 should be greater than that shown on its amended return. The effect for 1984 and 1986 is similar.

How the Transitional Rule at Section 809(g)(6) Comports with Section 811(d)

The rule at section 809(g)(6) exempts a mutual life insurance company subsidiary from section 811(d) (dealing with current vs future reserves) for purposes of section 809(b)(4) (requiring that plaintiff add the excess of statutory over tax reserves to equity) for policies issued before January 1, 1985. This exemption allows the subsidiary to include, in its tax reserves, reserves held with respect to excess interest guaranteed beyond the current taxable year. Section 809(g)(6) protects the subsidiary from having its average equity base increased by what would otherwise be all or part of an excess of statutory reserves over tax reserves. Because of the transitional rule at section 809(g)(6), the subsidiaries need not include excess interest reserves for future years in their average equity base. Thus, the subsidiaries, unlike their parents, get a break from the new rule at section 811(d). Section 811(d) does not operate to reduce the subsidiaries' deduction for policyholder dividends as it does for their parents.

The transitional rule, section 809(g)(6), specifically says that section 811(d) shall not apply in determining *tax reserves.* It does not say that section 811(d) shall not apply in determining statutory reserves, according to defendant, because section 811(d) never applied to statutory reserves in the first place. This specific reference to tax reserves means that section 811(d) would otherwise apply when calculating *tax reserves.* That is to say, and the parties agree, that but for the specific reference to it in section 809(g)(6),

section 811(d) would require that reserves for excess interest guaranteed beyond the end of the taxable year be excluded from tax reserves.

In discussion of the section 809(g)(6) exception, the Joint Committee on Taxation wrote that, "[f]or purposes of determining the excess of statutory policy reserves over tax reserves, [the subsidiary company's] tax reserves may be computed without regard to the accounting rule [section 811(d) ] that prohibits a company from taking into account amounts in the nature of interest that are in excess of the prevailing State assumed rate and guaranteed beyond the end of the taxable year ..." [10] Congress expressly exempted these subsidiary companies from the requirement that they subtract reserves for excess interest guaranteed beyond the end of the taxable year from tax reserves. If, as plaintiff argues, section 811(d) otherwise operates to exclude excess interest guaranteed beyond the end of the taxable year from both tax reserves and statutory reserves, then the permissive language used by the Joint Committee on Taxation is meaningless. This the court will not lightly infer.

Plaintiff argues that "the rule of section 809(g)(6) does not mean that there will be no [excess of statutory over tax reserves] for subsidiaries of mutual companies, nor does it assume that statutory reserves 'already include excess interest reserves.'" (Pl.'s Rep. Br. at 14.) Plaintiff seems to suggest that other factors, besides the section 811(d) adjustment, could create a disparity between statutory and tax reserves. This may be true, but is irrelevant to the issue of the 811(d) adjustment. The court finds, based on its construction herein of interrelated statutory provisions, that section 809(g)(6) does logically dictate that statutory reserves must include excess interest reserves although tax reserves do not. The resulting disparity produces, at least in part, the excess of statutory over tax reserves from which section 809(g)(6) provides transitional relief. Therefore, the transitional rule undercuts plaintiff's statutory interpretation.

### How the Adjustment Required by Section 809(b)(6) Comports with Section 811(d)

Section 809(b)(6) requires that the equity base shall be increased by 50% of the amount, "of any provision for policyholder dividends (or other similar liability) payable in the following taxable year." Reserves for excess interest guaranteed to be paid in the following taxable year are included in this category. Section 808(b)(2). According to the legislative history of this provision:

> Only 50 percent of this amount is added to the average equity base because it was believed that, on average, only 50 percent of the total annual statement provision for policyholder dividends to be paid in the following year (whether accrued or unaccrued for tax purposes at the end of the taxable year) is fairly allocable as a liability for the current year. Although a policyholder dividend may be paid at the end of a policy year, and not accrue for tax purposes until payment, recognition of part of that dividend as a current liability to determine the equity of the company recognizes that a dividend that is paid, in theory, accrued to the policyholder in a financial sense over the entire policy year.... [A]ny amounts set aside for policyholder dividends to be paid beyond the close of the following taxable year are not "payable in the following taxable year" and are included in the equity base in their entirety.

Joint Comm. on Taxation, 98th Congress, 2d Sess., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, 616–17 (Jt. Comm. Print 1984).

It would be illogical for Congress to carefully provide that no more than 50% of next year's policyholder dividends (including next year's portion of excess interest reserves) were "fairly allocable as a liability for the current year," *id.*, but then continue to exclude from the equity base *all* of the excess interest reserves for all of the years following the next year. This is what would be done if reserves for excess interest guaranteed beyond the end of the taxable year are excluded from the statutory reserves. Any-

---

**10.** Joint Comm. on Taxation, 98th Congress, 2d Sess., General Explanation of the Revenue Provi-

sions of the Deficit Reduction Act of 1984, 615–16 n. 31 (Jt. Comm. Print 1984).

thing included in statutory reserves that is not included in tax reserves gets added to the equity base and results in a higher tax bill. If the excess interest reserves for years two through eight are excluded from statutory reserves, as plaintiff wishes to do, they would *not* be added to the equity base, as is required according to the explanation quoted above. Meanwhile, incongruously, half of the reserves for excess interest from year one would be added to the equity base under section 809(b)(6). If an item is required to be added to the equity base, it is because Congress feels that it is not "fairly allocable" as a liability for the current year. If only half of next year's reserves for excess interest are considered "fairly allocable" as a liability in the current year, it does not logically follow that Congress would consider all of subsequent year's reserves for excess interest to be "fairly allocable" as a liability in the current year. The evidence shows that Congress did not intend excess interest reserves for the years beyond the current year to be counted as a current year liability, with the exception of the 50% reduction for policyholder dividends, which include excess interest, to be paid out in the calendar year immediately following the current tax year, as provided in section 809(b)(6).

### Double Counting

Section 809(b)(2)(B) states that "no item shall be taken into account more than once in determining equity base." Plaintiff argues that "if 50% of excess interest payable in the following calendar year is includable in the equity base by virtue of Section 809(b)(6), it cannot be added to the equity base again by being included in statutory reserves under Section 809(b)(4)." (Pl.'s Br. at 21.) Plaintiff's argument misses the point that *only* 50% of excess interest payable in the following calendar year is includable in the equity base by virtue of Section 809(b)(6). Plaintiff's argument is apparently based on its earlier characterization of the section 809(b)(6) provision as a "50% add-on [to surplus and capital]" (Pl.'s Br. at 21), when, in fact, section 809(b)(6) is more in the nature of a 50% reduction in what would otherwise be a 100% "add-on" of the provision for next year's policyholder dividends—the same as for all subsequent years. Plaintiff states

that, under section 809(b)(6), "a mutual company's deduction for policyholder dividends is reduced, *inter alia,* by an amount equal to the differential earnings rate multiplied by 50% of any reserve for excess interest payable in the following year." (Pl.'s Br. at 21.) Plaintiff's characterization, in all fairness, should continue, "... and by an amount equal to the differential earnings rate multiplied by 100% of any reserve for excess interest payable in all subsequent years." Section 811(d) as applied through section 809(b)(4) acts to exclude reserves for excess interest guaranteed beyond the end of the taxable year from tax reserves, which leads to a reduction in mutual life insurance companies' deduction for policyholder dividends. Section 809(b)(6) gives the mutual companies some relief from the combined impact of 811(d) and 809(b)(4). It merely gives back, with respect to the following year, half of reserves for excess interest that had been taken away. The court concludes that sections 809(b)(4) and 809(b)(6), as applied in this case by the government, do not result in recounting as prohibited by 809(b)(2)(B).

### CONCLUSION

The Commissioner has determined that plaintiff is required to include reserves for excess interest guaranteed beyond the end of the taxable year in statutory reserves for the purpose of reducing its deduction for policyholder dividends by the differential earnings amount. Specifically, according to the Commissioner, section 811(d) does not apply to exclude reserves for excess interest guaranteed beyond the end of the taxable year from statutory reserves. The Commissioner's ruling enjoys the presumption of correctness. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Income tax deductions are "a matter of legislative grace and ... the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO v. Commissioner,* 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (citing *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)). Here plaintiff has failed to carry its burden of proving that the Commissioner's ruling was inconsistent with the in-

tent of the statute. Accordingly, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED. The Clerk of the Court is directed to DISMISS the complaint.

**IT IS SO ORDERED**